195 N.J. Super. 103 (1984)
478 A.2d 416
JOSEPH IZHAKY AND BARBARA IZHAKY, PLAINTIFFS-RESPONDENTS,
v.
JAMESWAY CORPORATION, A BODY CORPORATE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 21, 1983.
Decided April 16, 1984.
*105 Before Judges FRITZ, FURMAN and DEIGHAN.
James F. Carney argued the cause for appellant (Friedman, Carney & Wilson, attorneys; James F. Carney, of counsel; Thomas A. Harley, on the brief).
Barry D. Epstein argued the cause for respondents (Neal H. Flaster, on the brief).
The opinion of the court was delivered by FRITZ, P.J.A.D.
Plaintiff,[1] the employee of an electrical contractor retained by defendant to relocate a switch and install wall outlets as a portion of defendant's remodeling a section of its headquarters, was seriously injured when his hand came in contact with a live wire. The jury returned a verdict for $150,000 but apportioned negligence 65% to 35% between defendant and plaintiff, respectively, so that judgment was entered in favor of plaintiff and against defendant for $97,500.
The essence of defendant's appeal implicates the legal question: what is the duty owed by an owner to the employee of an independent contractor respecting hazards incidental to the nature of the work? In this matter we are concerned with electrical shock to an electrician.
Defendant insists there is no duty owed to protect an electrician from the hazards of electricity inherent in the very work he was hired to perform. A proposition which wholly insulates an owner from liability for injuries to the employee of an independent contractor without regard for the condition of the *106 premises, where, as here, the actual production of the injury was from a source directly related to the work, is rejected.
Citing Rodrigues v. Elizabethtown Gas Co., 104 N.J. Super. 436 (App.Div. 1969), defendant concedes that ordinarily a landowner owes a duty to employees of an independent contractor who come upon the property to provide those employees with a reasonably safe place to work. We would add that this duty is nondelegable. Id. at 442. But defendant seeks haven in Wolczak v. National Electric Products Corp., 66 N.J. Super. 64 (App.Div. 1961) where the following, adopted in Rodrigues, appears:
The duty to provide a reasonably safe place in which to work is relative to the nature of the invited endeavor and does not entail the elimination of potential operational hazards which are obvious and visible to the invitee upon ordinary observation. Horton v. Smith, 128 N.J.L. 488 (Sup.Ct. 1942); Mergel v. Colgate-Palmolive-Peet Co., 41 N.J. Super. 372, 378-79 (App.Div.), certification denied 22 N.J. 453 (1956). This is especially so when the invitee is an experienced laborer hired either to correct the very danger present or to perform his tasks amidst the visible hazards. The landowner may assume that the worker, or his superiors, are possessed of sufficient skill to recognize the degree of danger involved and to adjust their methods of work accordingly. Thus the unimpaired line of holdings to the effect that the duty to provide a reasonably safe working place for employees of an independent contractor does not relate to known hazards which are part of or incidental to the very work the contractor was hired to perform. McDonald v. Standard Oil Co., 69 N.J.L. 445, 448 (E. & A. 1903); Broecker v. Armstrong Cork Co., 128 N.J.L. 3 (E. & A. 1941); Beck v. Monmouth Lumber Co., 137 N.J.L. 268 (E. & A. 1947); Gibilterra v. Rosemawr Homes, supra, 19 N.J. [166] at page 170; Huels v. General Electric Co., 134 N.J.L. 165 (Sup.Ct. 1946); Canonico v. Celanese Corp. of America, 11 N.J. Super. 445, 454 (App.Div. 1951); Trecartin v. Mahony-Troast Construction Co., supra, 18 N.J. Super. [380] at p. 386; Mergel v. Colgate-Palmolive-Peet Co., supra, 41 N.J. Super., at p. 379; Jensen v. Somerset Hospital, 58 N.J. Super. 204, 208 (App.Div. 1959), certification denied 31 N.J. 551 (1960). See 3 Stevenson, Law of Negligence (1954), §§ 863, 865, pp. 1316-17, 1318-20. [At 75.]
This reliance ignores the further instruction of Wolczak that "active interference of the owner in the manner of doing the work may implicate him in negligence for injuries to the employees ... related to the manner in which the work is performed or to the furnishing of defective equipment." Id. at *107 73. Moreover, it unjustifiably ignores so much limitation of the Wolczak holding as is there expressed in terms of relieving the owner from any obligation to eliminate "potential operational hazards which are obvious and visible to the invitee upon ordinary observation." Id. at 75; emphasis supplied. It occurs to us that this implies a duty upon the owner to eliminate or warn of potential operational hazards which are not or may not be obvious and visible to the invitee, i.e., here the electrical contractor, upon ordinary observation.
Plaintiff produced evidence that preparatory carpentry work necessary to the electrical work to be done was undertaken by defendant through its employees. This consisted in part at least of the removal of a wall containing the switch which was to be relocated. While there is some factual uncertainty created by the testimony respecting whether, in the course of this, defendant's employees, in removing the switch box from the wall, wrapped tape around the switch in the box or left the box taped but without a switch and with bare wires, no one disputes the fact that these employees placed these electrical components in a dropped ceiling where plaintiff was later to reach for them and receive the shock and injuries for which he sues.
This participation by defendant in the work, including some degree of involvement with the electrical system, removes the limited immunity provided by Wolczak, which specifically indicts such owner participation (or in that case, general contractor vis-a-vis subcontractor participation) as the furnishing of defective materials. Id. at 71, 73. A showing of control by the owner over the operation is not necessary. Piro v. Public Service Electric & Gas Co., 103 N.J. Super. 456 (App.Div. 1968), aff'd o.b. 53 N.J. 7 (1968).
Further, a fact question exists respecting whether the "operational hazard" here present, created at least in part by defendant's repositioning the wires, was "obvious and visible to the *108 invitee upon ordinary observation." Wolczak, supra, 66 N.J. Super. at 75.
There is other evidence of defendant's participation in the endeavor. There is evidence from which a jury might have found that defendant's employees undertook to throw a breaker depriving the line in question of electricity and represented this had been done. With regard to this particular activity plaintiff and defendant view differently the question as to whether at that time these employees were acting for defendant or as "agents" of plaintiff's employer. We need not solve that problem here for other evidence, all as aforesaid, is sufficient to implicate a duty in defendant.
For all these reasons we are persuaded that a jury question or questions inhered, that the trial judge was eminently correct in submitting the matter to a jury and that defendant's contention it owed no duty to plaintiff is without merit.
This being so we are equally unpersuaded by the second issue forwarded in defendant's brief, that "[t]he failure of the trial court to charge that Jamesway had no duty to protect plaintiff against the known hazards of the work which he was hired to perform as requested by defendant was harmful error requiring reversal of the verdict and a new trial."
Defendant requested the following charge:
19. Where a plaintiff's injuries are caused by known hazards part of or incidental to the very work that his employer, an independent contractor, was hired to perform, then you must find the landowner not negligent.
Therefore, if you find that plaintiff's handling of the electrical cable containing the light switch (which caused plaintiff's injuries) was part of Buchman's [plaintiff's employer] job of relocating the light switch, then you must find that Jamesway was not negligent. [All citations omitted.]
Directed to duty rather than causation, as the context indicates, the charge is not only incomplete but misleading. If there is evidence of sufficient owner participation or operational hazard less than obvious and visible upon ordinary observation, then *109 the nondelegable duty of the owner to provide a safe place to work attaches despite the otherwise usual application of the Wolczak rule. It is appropriate to observe here that the trial judge instructed the jury competently and wholly adequately on proximate cause and the effect of efficient intervening cause to which particular portion of the charge no exception was taken either below or here.
We turn to defendant's further complaint respecting the charge. Plaintiff testified that while he was holding the wire in question, when he was distracted by "a little noise," he turned his head and "got electrocuted." Defendant requested a charge that
A person does not have a duty to prevent another from being startled or frightened. [Citation omitted.] If the actions of a person, even if negligent, merely create sounds which alarm another person, who then injures himself while responding to investigate the source of such sounds, the making of the noise does not violate any duty owing to the injured party. [Citation omitted.]
If the failure of the trial judge so to instruct the jury was error  and in the circumstances of this case, we are not convinced it was  the error was harmless, State v. Macon, 57 N.J. 325 (1971), in the context of the charge read as a whole. State v. Wilbely, 63 N.J. 420, 422 (1973).
Finally defendant attacks the verdict as against the weight of the evidence and as constituting a clear miscarriage of justice under the law. Conscious of the teaching of Dolson v. Anastasia, 55 N.J. 2 (1969) that the process of evidence evaluation mandated by an argument such as this requires, both in the trial court and here, "not a pro forma exercise, but ... a high degree of conscientious effort and diligent scrutiny" (at 6), we have scrutinized the record. We are content to adopt the reaction of the trial judge on the motion before him for judgment or new trial, as set forth in his detailed 13-page letter opinion, as our own.
Affirmed.
NOTES
[1] Reference to plaintiff in the singular is to the personal injury plaintiff, Joseph Izhaky. His wife sued per quod.