Samantha **SCHREIBER** and Michelle Salem, Plaintiffs,

v.

Robert J. **CAMM**, Defendant.

Civ. A. No. 91–5473 (JEI).

United States District Court, D. New Jersey.

April 5, 1994.

Budd Larner Gross Rosenbaum Greenberg
& Sade, P.C. by Carl Greenberg, Brian J.

Levine, Phillip J. Duffy, Short Hills, NJ, for plaintiffs.

Braff, Harris & Sukoneck by Harold I. Braff, Stephen Wellinghorst, Anthony S. McCaskey, Livingston, NJ, for defendant Robert J. Camm.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT CAMM'S MOTION FOR SUMMARY JUDGMENT

IRENAS, District Judge.

Defendant Robert Camm purchased an estate in Jamaica known as Mockingbird Hill, which he rented out to vacationers. Mr. Camm employed a staff of six to manage the estate, and contracted with a local security agency to provide security. Plaintiffs, who were shot and injured by a security guard while staying at the estate, brought suit against Camm for negligent hiring and vicarious liability. Defendant now moves for summary judgment, claiming that he cannot be held liable for the acts of an independent contractor absent evidence of obvious incompetence or an inherently dangerous activity. Plaintiffs respond that Camm had a nondelegable duty to protect the tenants from harm, and is therefore vicariously liable for any negligent acts of the security guard.

Because we find that (1) the plaintiffs have failed to present evidence of any independent negligence on the part of the defendant-landowner and (2) there are no grounds on which to impose vicarious liability on the defendant, we will grant the defendant's motion for summary judgment.

## I. BACKGROUND

### A. *Factual Background*

Mockingbird Hill Estate ("Mockingbird Hill," or "the estate") is a former plantation located in Hanover, Jamaica, comprising a guest house that accommodates twelve people, a pool, a cabana, and servants' quarters. Defendant Robert Camm and his wife purchased Mockingbird Hill in 1986 from the estate of the previous owner for use as both a personal vacation home and an investment property.

After purchasing the estate, Camm continued to employ the same staff of six—cook, butler, chambermaid, laundress, and two gardeners—that had been employed by the previous owner. He retained the same agent, Tony Walker, to manage the property. In addition, he engaged the same independent security company, Northern Security Services, Ltd. ("Northern Security"), to provide security for the estate. Northern Security had been recommended to Camm by the managing agent. It had supplied security services to Mockingbird Hill prior to Camm's purchase and it had numerous clients in the area, including the neighboring resort hotel.[1]

In or around August of 1989, Martin Bernstein and his wife Deborah decided to rent Mockingbird Hill for two weeks in December.[2] The Bernstein party of nine arrived at Mockingbird Hill on December 22, 1989, and was introduced to the staff on that same day. Defendant alleges, and the plaintiffs do not dispute, that the party was introduced to a security guard from Northern Security, and that this guard patrolled the grounds on the evenings of December 22 and 23, 1989.[3]

On the evening of December 24, 1993, plaintiffs Michelle Salem and Samantha Schreiber, Mrs. Bernstein's daughter and niece, respectively, decided to go into Montego Bay for the evening, and left the estate at approximately 10:00 P.M. While they were out, a replacement security guard named

---

1. Camm had understood from previous visits to Jamaica that security guards were provided "whenever guests were there or owners were there." Camm Deposition at T29/L23–24; T70/L16–20. He had seen guards on prior visits to Mockingbird Hill and other homes in Jamaica. Camm Deposition at T71/L6–8.

2. The Mockingbird Hill brochure did not represent to the Bernsteins that an armed guard would patrol the premises, presumably because Camm understood the provision of security guards for private residences to be an unspoken custom in Jamaica. However, Martin Bernstein testified at his deposition that, had he known of the need for armed security guards at the estate, he would "definitely not" have chosen to stay there. Bernstein Deposition at T134/13–15.

3. Plaintiffs emphasize, somewhat curiously, that while they were aware of the guard's presence, they were not aware that he was armed. Bernstein Deposition at T61/12–14.

Hansel McHale arrived to patrol the grounds, the usual guard having been sidelined with car trouble. McHale was allegedly advised that the two women would be returning later that night.

The women returned to Mockingbird Hill at 2:05 A.M. the next morning and proceeded to the swimming pool area, the lights of which had been turned off at some point during the evening. McHale saw shadows in the pool area, mistook the two women for intruders, voiced warnings which were not answered, and then fired two shots at the women. Samantha Schreiber was rendered a quadriplegic, while Michelle Salem suffered a flesh wound to the right arm.

### B. *Procedural Background*

Both women filed suit against Camm and the two travel agencies involved in the District of New Jersey, with jurisdiction premised on the diversity of the parties.[4] The complaint alleged causes of action sounding in negligence, negligent misrepresentation, negligent hiring, and respondeat superior.

Defendant Robert Camm moved for summary judgment, claiming that the negligent conduct of Hansel McHale, an independent contractor, could not be imputed to him. We denied the motion without prejudice, so that the parties could conduct further research into the applicability of Jamaican law, and consider whether the Camm's status as a landowner or his decision to provide security guards on the premises conferred upon him a nondelegable duty to protect the Bernstein party.

Defendant now renews his motion for summary judgment. He argues that, irrespective of whether the law of Jamaica or New Jersey is applied, a landowner may not be held liable for the acts of an independent contractor unless the contractor is obviously incompetent or the services provided are inherently dangerous. Plaintiffs contend that Camm had a non-delegable duty to protect the estate's occupants and is therefore vicari-

ously liable for the negligent acts of the guard.

## II. LEGAL ANALYSIS

### A. *The Standard for Summary Judgment*

Under Fed.R.Civ.P. Rule 56(c), "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

At the summary judgment stage, it is not the role of the judge to weigh the evidence or to evaluate its credibility, but to determine "whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party such that a reasonable jury could return a verdict for that party. *Id.* A non-moving party may not rest upon mere allegations, general denials, or vague statements. If the non-moving party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Bixler v. Central Penn. Teamsters Health & Welfare Fund*, 12 F.3d 1292 (3d Cir.1993); *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Engineers*, 982 F.2d 884, 980–91 (3d Cir.1992).

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Finally, summary judgment should be granted unless a dispute over a material fact is genuine, which the Court has defined as such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

4. Both plaintiffs are Florida residents; defendant Camm is a New Jersey resident; and defendants Tops Travel Agency and Villas and Apartments Abroad are New York corporations. Despite the significant conduct of Northern Security, it was not named as a party to this action, presumably because its insurance had lapsed in the year prior to the incident. The action was later dismissed as to Tops Travel Agency and Villas and Apartments Abroad.

### B. Choice of Law

As a federal court sitting in diversity, we apply the choice-of-law principles of the forum state. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). New Jersey has rejected the traditional rule of *lex loci delicti* in favor of the more flexible governmental-interest analysis in choice-of-law decisions. *See, e.g., State Farm Mutual Ins. Co. v. Estate of Simmons*, 84 N.J. 28, 34, 36, 417 A.2d 488 (1980). Under that analysis, the court must first determine whether a conflict exists between the laws of the interested states.[5] If one exists, the court undertakes a qualitative analysis of the governmental policies underlying the laws of each state and of the contacts between the states and the litigants. See *Veazey v. Doremus*, 103 N.J. 244, 248, 510 A.2d 1187 (1986), and cases cited therein.

In the absence of a conflict, the district court applies the law of the forum state. *Schum v. Bailey*, 578 F.2d 493, 497 (3d Cir. 1978); *Hiller v. Franklin Mint, Inc.*, 485 F.2d 48 (3d Cir.1973); *see also Restatement (Second), Conflict of Laws*, § 136, cmt. h; Eugene F. Scoles & Peter Hay, *Conflict of Laws* § 2.6 at 17, § 12.19; *cf.* N.J.S.A. 2A:82–27 (discussing requirements for judicial notice of foreign law; noting that where parties have failed to present such law, presumption arises that such law is the same as that of New Jersey). The parties in this case have presented no evidence of conflict between the laws of Jamaica, Florida, and New Jersey on the issue of the liability of a landowner for the negligent acts of an independently-hired security guard, and we will therefore rely on the law of New Jersey in analyzing of the issue.

### C. Liability under New Jersey Law for the Negligent Acts of an Independent Contractor

The general rule in New Jersey, as in most jurisdictions, is that an owner who hires an independent contractor is not liable for the negligence of that contractor and any harm resulting therefrom. *O'Keefe v. Sprout–Bauer, Inc.*, 970 F.2d 1244 (3d Cir. 1992). "[O]rdinarily, where a person engages a contractor, who conducts an independent business by means of his own employees, to do work not in itself a nuisance (as our cases put it), he is not liable for the negligent acts of the contractor in the performance of the contract." *Majestic Realty Associates v. Toti Contracting Co.*, 30 N.J. 425, 431, 153 A.2d 321, 324 (1959); *see also id.* and cases cited therein. New Jersey courts recognize exceptions to this rule where (1) the landowner retains control of the manner and means of the doing of the work which is the subject of the contract, (2) he knowingly engages an incompetent contractor, or (3) the activity contracted for constitutes a nuisance per se. *Id.; see also Cassano v. Aschoff*, 226 N.J.Super. 110, 543 A.2d 973, 975 (App.Div.), *certif. denied*, 113 N.J. 371, 550 A.2d 476 (1988).

In the previous motion for summary judgment, plaintiffs argued that Camm was liable under the "incompetent contractor" exception because of Northern Security's lapsed insurance coverage.[6] *See generally Majestic Realty*, 30 N.J. at 431–32, 153 A.2d 321; *see also Terranella v. Union Bldg. & Construction Co.*, 3 N.J. 443, 446, 447, 70 A.2d 753 (1950); *Izhaky v. Jamesway Corp.*, 195 N.J.Super. 103, 478 A.2d 416 (App.Div. 1984). However, plaintiffs' argument was rejected in a recent decision of the Third Circuit which held that "under New Jersey law, one ... who hires an independent contractor who is uninsured, or financially unable to pay tort judgments ... [is not, without more] liable in tort for that independent contractor's negligence under New Jersey's 'incompetent contractor' exception to the general rule against such imputed liability." *Robinson v. Jiffy Executive Limousine Co.*, 4 F.3d

---

5. In the case at bar, the laws of New Jersey, Florida, and Jamaica are all potentially applicable, because of the domiciles of the parties and the place of the accident.

6. Plaintiffs have not demonstrated (1) that Camm retained control over the manner in which the security guard performed his task, or (2) that the work performed by a security guard constitutes a nuisance per se.

237 (3d Cir.1993), *overruling Becker v. Interstate Properties*, 569 F.2d 1203 (3d Cir.1977), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978).

Plaintiffs now argue that the defendant had a non-delegable duty to protect guests from harm that renders him vicariously liable for the negligent acts of the security guard. In the remainder of the opinion, we will examine those provisions of the *Restatement (Second) of Torts* that address the vicarious liability of an employer for the negligence of an independent contractor, to determine whether a non-delegable duty exists on the facts of this case.

### D. *Vicarious Liability Under the Restatement*

1. *The General Rule and Its Exceptions*

Section 409 of the *Restatement (Second) of Torts* sets forth the general rule of non-liability of an employer for physical harm caused to another by the act or omission of an independent contractor. The rationale behind the rule is discussed in the accompanying commentary:

> The explanation for [the rule of non-liability] most commonly given is that, since the employer has no power of control over the manner in which the work is to be done by the contractor, it is to be regarded as the contractor's own enterprise, and he, rather than the employer, is the proper party to be charged with the responsibility of preventing the risk, and bearing and distributing it.

*Restatement (Second) of Torts* § 409 cmt. b. (1977); *see also Wolczak v. National Electric Products Corp.*, 66 N.J.Super. 64, 70, 168 A.2d 412 (App.Div.1961). In other words, because of the often specialized nature of the work entrusted to the independent contractor, the owner does not—nor should he—maintain any control over the manner in which the work is completed. Where the owner retains control over the manner in which the work is conducted, he likewise retains liability for physical injuries caused by the contractors.

■ There are numerous exceptions to the general rule of non-liability, which "have so far eroded the 'general rule' that it can now be said to be 'general' only in the sense that it is applied where no good reason is found for departing from it." *Restatement (Second) of Torts* § 409 cmt. b. (1977). These exceptions fall into three general categories: (1) negligence of the employer in selecting, instructing, or supervising the contractor; (2) non-delegable duties arising out of some relation toward the public or a particular plaintiff; and (3) non-delegable duties arising from the entrustment of work which is specially, peculiarly, or inherently dangerous. *Id.*[7] Since plaintiffs have not presented evidence of the defendant's independent negligence, we will consider only the latter two categories of exceptions.

2. *Liability Arising Out of a Relationship Between the Parties*

Plaintiffs argue for the imposition of liability based on the defendant's status as a landowner, pursuant to §§ 419 and 420 of the *Restatement*. Section 419 imposes liability where the lessor employs an independent contractor to perform "a duty which the lessor owes to his lessee to maintain the leased land in reasonably safe condition," while § 420 imposes liability for injuries caused by the lessor's decision to employ an independent contractor to "make repairs which the

---

7. The non-delegable duty exceptions arise in situations in which, for reasons of policy, the employer is not permitted to shift responsibility for the proper conduct of work to the contractors....

> The statement commonly made in such cases is that the employer is under a duty which he is not free to delegate to the contractor. Such a "non-delegable duty" requires the person upon whom it is imposed to answer for it that care is exercised by anyone, even though he be an independent contractor, to whom the performance of the duty is entrusted. Such duties have been recognized in a series of exceptions to the "general rule" of non-liability stated in § 409....

> These exceptions have tended to develop in particular types of fact situations which have tended to be repeated, particularly where the duty of the employer relates to the putting or maintaining of land, structures, and chattels in such a condition as not to be unreasonably dangerous to others.

*Restatement (Second) of Torts* at 394.

lessor is under no duty to make." *Restatement (Second) of Torts* §§ 419, 420.

Plaintiffs contend that "Jamaica's general reputation for crime, as well as prior specific instances of criminal activity at or near Mockingbird Hill," gives rise to a non-delegable duty of the defendant to protect his guests. Plaintiffs' Brief in Opposition at 12.[8] In the alternative, plaintiffs argue that defendant voluntarily undertook to protect them from harm, and should therefore be liable for the negligent acts of the security guard.

Initially, we question the applicability of §§ 419 and 420 in this setting. The typical § 419/420 lawsuit involves alterations negligently made to the land or structures thereon which cause harm to licensees or invitees.[9] Plaintiffs insist that the distinction is more apparent than real. We disagree. In construction cases, owners are often more proximately involved in the activities of the contractor, and thereby have a greater opportunity to view and control any risks that might arise. Where the contract involves the provision of services, on the other hand, the owner's ability to discern and control risks is more circumscribed.[10]

However, even assuming that §§ 419 and 420 are applicable to this case, we believe that they are modified by § 426, which immunizes the employer from liability for negligence collateral to the risk of doing the work.[11] The comments to this section explain "collateral negligence" as follows:

> It has sometimes been described as negligence in the operative detail of the work, as distinguished from the general plan or method followed or the result to be accomplished. Frequently, this distinction can be made, since negligence in operative detail will often not be within the contemplation of the employer when the contract is made. The distinction is not, however, essentially one between operative detail

---

8. Plaintiffs also discern a duty from a line of New Jersey cases addressing the "non-delegable duty [of an owner] to exercise reasonable care for the safety of persons using the premises at its invitation." *Mayer v. Fairlawn Jewish Center*, 38 N.J. 549, 186 A.2d 274 (1962) (finding liability of owner of religious social center for injuries caused by negligent acts of contractor during remodeling of the center); *see also De los Santos v. Saddlehill, Inc.*, 211 N.J.Super. 253, 511 A.2d 721 (App.Div.1986) (finding owner of building liable for death of child tenant caused by failure of elevator maintenance company to install safety devices during maintenance); *Gill v. Krassner*, 11 N.J.Super. 10, 77 A.2d 462 (App.Div.1950) (finding owner of store liable for injuries caused by cleaning solution left on the floor).

Plaintiffs concede that the *Gill–Mayer* line of cases involve injuries resulting from physical conditions on the property, but extrapolate from these cases "a lessor's liability to his lessees [which] extends to the 'unreasonable' actions of an independent contractor in performance of a service (security) as opposed to the contractor's actions in creating a dangerous condition on the property." Plaintiffs' Brief in Opposition at 13. They contend that the negligence of the security guard in performing his duties created a "dangerous condition" on the property for which the defendant is liable. As discussed in greater detail in the text, we question the applicability of this line of cases to suits involving the provision of services. Moreover, even if we were to find these cases applicable, we believe the defendant would not be liable for injuries resulting from risks which do not inhere in the nature of the work.

9. In fact, the *Mayer* court framed the nondelegable duty as such:

> If, while repairs or structural alterations were going on, a dangerous condition was created which resulted in injury to an invitee liability for damages would exist. And with respect to that liability it would be immaterial whether the construction work was being performed by the Center's own employees or by an independent contractor.

186 A.2d at 277.

10. The difference between independent contractor cases involving injuries arising from the structural alteration or maintenance of the owner's property and those arising from other situations has been recognized by the Third Circuit. *See Robinson v. Jiffy Executive Limousine Co.*, 4 F.3d 237, 242 (3d Cir.1993).

11. Section 426 provides:

> Except as stated in §§ 428 and 429 [not applicable here], an employer of an independent contractor, unless he is himself negligent, is not liable for any physical harm caused by any negligence of the contractor if (a) the contractor's negligence consists solely in the improper manner in which he does the work, and (b) it creates a risk of such harm which is not inherent in or normal to the work, and (c) the employer had no reason to contemplate the contractor's negligence when the contract was made.

*Restatement (Second) of Torts* § 426.

and general method. *It is rather one of negligence which is unusual or abnormal, or foreign to the normal or contemplated risks of doing the work, as distinguished from negligence which creates only the normal or contemplated risk.*

*Restatement (Second) of Torts* § 426 cmt. a (emphasis added). Another commentator has described collateral negligence as a doctrine that "limits the vicarious liability of the principal to risks that inhere in the nature of the work and excludes risks of unrelated or tangentially related torts." Alan O. Sykes, *The Economics of Vicarious Liability,* 94 Yale L.J. 1231, 1272 (1984).

In the case at bar, the risks contemplated at the time the parties entered into the contract involved the protection of the estate and its occupants from harm by third parties. Had the security guard failed to show up at the estate and harm occurred, or had the guard been negligent in failing to protect the estate from harm by third parties, the defendant might have been vicariously liable. However, the possibility that the security guard himself might inflict harm on the occupants of the estate was clearly not contemplated at the time the contract was made.[12]

The negligence in this case was not that the guard failed to protect the tenants from harm from third parties, but that in doing so he injured them himself. This negligence is clearly "foreign to the normal or contemplated risks of doing the work." We therefore decline to find the defendant liable under a theory of vicarious liability premised on §§ 419 and 420. *See Ross v. Texas One Partnership,* 796 S.W.2d 206, 213–14 (Ct. App.Tex.—Dallas 1990) (refusing to find owner of apartment complex liable for negligent acts of independent security guard).

### 3. Liability Arising from Dangers Inherent in the Work to Be Performed

The second category of non-delegable duties arises in situations where the work to be performed (1) is itself inherently dangerous or (2) may create a peculiar risk of physical harm to others. We will analyze the plaintiffs' contentions under both sub-categories.

### a. Where the Work to Be Performed Is Itself Inherently Dangerous

Plaintiffs argue that employing an armed guard on the premises is an inherently dangerous activity for which the defendant should be held vicariously liable. *See Restatement (Second) of Torts* § 427A (setting forth liability of owner for physical harm caused by performance of abnormally dangerous activity).

■ New Jersey courts have not addressed the issue of whether the use of armed security guards is an inherently dangerous activity. When the state's highest court has not addressed the precise issue in question, we must predict how it would resolve the issue. *Borman v. Raymark Industries, Inc.,* 960 F.2d 327, 331 (3d Cir.1992). "In a diversity case, however, federal courts may not engage in judicial activism. Federalism concerns require that we permit state courts to decide whether and to what extent they will expand state common law." *City of Philadelphia v. Lead Industries Ass'n,* 994 F.2d 112, 123 (3d Cir.1993).

■ Courts that have addressed the issue have concluded that the use of armed security guards to protect one's property is not so inherently dangerous as to confer a nondelegable duty upon the landowner. *See generally Annotation, Liability for One Contracting for Private Police or Security Service for Acts of Personnel Supplied,* 38 A.L.R.3d 1332 at § 5b. In *Brien v. 18925 Collins Ave. Corp.,* 233 So.2d 847 (Fla.App.1970), for example, plaintiff's decedent was shot and killed by a security guard patrolling the defendant's premises. Plaintiff argued that armed security guards were an exception to the general rule of non-liability for the acts of an independent contractor, but the trial court disagreed and granted summary judgment in favor of the defendant.

The Florida District Court of Appeal framed the question as "whether the task of

---

12. In fact, had that been a concern, the defendant would likely have been held liable for knowingly hiring an incompetent contractor.

guarding one's property from possible malefactors by a guard armed with a firearm is so inherently dangerous to third persons that we should hold that the protection of the public from the negligent actions of the security guard in the use of the firearm is a nondelegable duty of the owner." 233 So.2d at 848. While conceding that a firearm was a dangerous instrumentality, the court did "not think that a lawful activity involving the use of firearms is an inherently dangerous activity." *Id.* at 849. Therefore, the court refused to find the landowner liable, absent evidence that the owner knew or should have known of the dangerous propensities of the guard. *Cf. Del Signore v. Pyramid Security Services, Inc.,* 147 A.D.2d 759, 537 N.Y.S.2d 640 (3d Dept.1989) (declining to find owner of premises liable for injuries inflicted on concert patrons by security guard, finding that "services provided were [not] so specialized or hazardous as to impose a nondelegable duty on [the owner] to ensure proper performance").[13]

We believe that courts in New Jersey would concur with the reasoning of the *Brien* and *Del Signore* cases. Plaintiffs have presented no evidence of a problem, in either Jamaica or the United States, of security guards harming the people they were supposed to protect. Indeed, an independent review of the applicable case law has revealed only two cases in which security guards were alleged to have shot their charges. Given the pervasiveness of private armed security guards in this country,[14] the legal uncertainty surrounding liability issues, and the litigiousness of American society, the paucity of case law on this subject suggests that injury to innocent bystanders by quick-on-the-trigger security guards is not a widespread problem. We therefore find that the deployment of an armed security guard is not an inherently or abnormally dangerous activity, absent knowledge (imputed or actual) of the dangerous propensities of the security guard.

### b. Liability for Failure to Take Precautions Against Peculiar Risks

Where the work to be performed is not itself inherently dangerous but can create peculiar risks of physical harm unless certain precautions are taken, a landowner can be liable for the failure of an independent contractor to exercise reasonable care to take such precautions. Section 413 of the *Restatement (Second) of Torts* provides that an owner can be liable for failing to account for peculiar risks in the work entrusted to a contractor at the time of contracting. Sections 416 and 427, on the other hand, provide that an owner remains liable for injuries from risks which he should have contemplated at the time he entered into the contract.[15]

---

**13.** Plaintiffs argue that *Brien* did not address the question of whether a person who employs an armed security guard has a non-delegable duty to ensure that the guard performs his tasks in a non-negligent manner because the court concluded that the lawful use of a firearm did not constitute an inherently-dangerous activity. However, plaintiffs misinterpret the significance of the court's finding: had the court found that the lawful use of a firearm was an inherently dangerous activity, it would then have imposed a non-delegable duty upon the hirer to ensure that the guard performs his duties in a non-negligent manner. In other words, the non-delegability of the duty was predicated on whether the activity (here, the lawful use of a firearm in connection with one's employment as a security guard) was inherently dangerous.

**14.** We note that the courthouse in which this Court's chambers are located is guarded in part by armed guards employed by a private security company.

**15.** *Restatement (Second) of Torts* § 413:

One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

*Id.* The commentary to this section notes that it is concerned "with special risks, peculiar to the work to be done, against which a reasonable man would recognize the necessity of taking precautions." *Id.* at cmt. b.

Whereas § 413 sets forth the rule of liability for the employer who fails to provide in the contract, or in some other manner, that the contractor shall take precautions, §§ 416 and 427 set forth the rules of liability for the employer who does so provide. Section 416 provides:

Taken together, the provisions indicate that an owner remains liable for injuries arising from risks inherent in the activity entrusted to the independent contractor that are known to the parties at the time they enter into the contract.

 As stated in the previous section, we believe that the risks contemplated by the defendant and Northern Security when they entered into the contract were that the guards provided might (1) fail to show up and guard the property, or (2) fail to protect his charges from dangers posed by third parties. However, we do not believe that the possibility that a security guard might harm the very people or property he was hired to protect was contemplated by the parties. We therefore do not believe that the remote possibility of harm from the guard himself constitutes an inherent risk for which the defendant can be held liable under §§ 413, 416, or 427.

Nor do we believe that there were any additional precautions the defendant could have taken. The defendant's responsibility was to investigate the security agency before hiring it (which he did), and not to oversee the manner in which the guards performed their duties. No one would suggest that defendant had the duty—much less the expertise—to train the guards. We therefore decline to recognize a non-delegable duty in this case premised on either the performance of an inherently dangerous activity or on risks inherent in the work performed.

## III. CONCLUSION

The distinctions which undergird the various exceptions to the *Restatement* rule exonerating independent contractors are often difficult to apply, particularly when the fact pattern at issue does not involve the physical construction of improvements to real estate.

Because the owner of real estate will usually have significant input into the nature and extent of improvements on the property, the law sometimes imposes liability on the owner when this work is negligently performed and the work itself causes harm. One example is the construction of a new roof which, because of negligent workmanship by the independent contractor, collapses and injures a guest or invitee.

The owner is no stranger to the roof construction. She probably was involved in a variety of decisions which impacted on the work, such as design or material selection. As a practical matter, there may even be a level of supervision, since the owner is well-motivated to ensure that the work is done properly. It is in this situation that the exceptions stated in §§ 419 and 420 of the *Restatement* and the *Gill–Mayer* line of cases in New Jersey case law, operate to impose liability on the owner.

If, however, in constructing the roof the independent contractor negligently drops a hammer on an innocent passerby, § 426 calls it "collateral negligence" and exonerates the owner. In the construction context this dis-

---

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.
*Restatement (Second) of Torts* § 416.
Section 427 is almost identical to § 416:
One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

*Restatement (Second) of Torts* § 427.
The commentary to § 416 indicates that the provision is closely related to § 427, in that both "represent different forms of statement of the same general rule, that the employer remains liable for injuries resulting from dangers which he should contemplate at the time that he enters into the contract, and that he cannot shift to the contractor the responsibility for such dangers, or for taking precautions against them." *Restatement (Second) of Torts* § 416, cmt. a. While the two rules are often applied interchangeably, the comments indicate that § 416 is more appropriate where the employer should anticipate a particular risk, while § 427 is more appropriate where the danger involved in the work calls for a number of precautions or involves a number of possible hazards. *Id.*

**1180**

tinction makes some sense. In is inevitable that the owner will have input into the nature and extent of the roof construction. It is not reasonable to expect that she will tell a carpenter how to wield a hammer, nor is there any public policy which would suggest that an owner should be responsible for controlling the manner in which a carpenter performs particular tasks.

If we accept that providing armed security services is not an abnormally dangerous activity, but also conclude that the safety of real property from the possible hazards of criminal activity is a "condition" of real estate which implicates the doctrines of §§ 419 and 420, the case comes down to the determination of whether the accidental (and negligent) shooting of a tenant by a security guard is more akin to the collapse of the negligently constructed roof or to the dropping of a hammer on the head of a passerby in the course of construction. Simply stated, was the shooting collateral negligence contemplated by § 426 or a dangerous condition envisioned in §§ 419 and 420 and the *Gill–Mayer* cases.

In a case where the harm flows from inadequate security, it seems reasonable to impose liability on the owner. After all, the owner decides whether or not to have any security, and, if so, how much. The condition of "safeness" in this sense flows at least in part from a decision made by the owner and over which the owner has some control. Just as an owner can decide what kind of roof she wants, so can she decide what kind and how much security is enough.

But, for the same reason that the law does not expect an owner to tell a carpenter how to wield the hammer, there is no reason to impose on the owner the duty of instructing a security guard on the rules of engagement with suspected wrongdoers. When to unholster a weapon, when to shoot, how to distinguish would-be felons from innocent victims is, like carpentry, a skill best left to those with specialized knowledge. Only if the owner knows that the independent contractor lacks skill with gun or hammer, as the case may be, is it reasonable to impose liability. *Restatement (Second) of Torts* § 411. Noth-

ing in this case suggests that the defendant thought he was hiring an incompetent guard.

The distinction made in this opinion is neither intuitive nor ineluctable, and it is made in a diversity case with little guidance from the New Jersey appellate courts. We have attempted to harmonize, as best we understand them, the conflicting policy considerations which motivate (i) the "general" rule of § 409 exonerating defendants from the consequence of the negligence of their independent contractors, (ii) the exceptions relating to dangerous conditions in real estate created by negligent independent contractors found in §§ 419 and 420, and (iii) the exception to the exceptions found in § 426 for collateral negligence.

Cases involving independent contractors often present a court with a classic and difficult legal dilemma—which of two innocent parties must bear a loss which is often grievous. *See generally Robinson v. Jiffy Executive Limousine Co.,* 4 F.3d 237 (3d Cir.1993). This opinion is but an educated guess as to how the New Jersey Supreme Court would resolve the conflict if presented with a similar fact pattern.

Since the plaintiffs failed to adduce evidence of independent negligence on the part of the defendant, liability was dependent on the existence of a non-delegable duty. We have declined to recognize such a duty on the facts of this case, whether premised on the relationship between the parties or on the nature of (and risks inherent in) the activity. The defendant's motion for summary judgment will therefore be granted.

For the reasons set forth above,

**IT IS** on this *5th* day of April, 1994,

**ORDERED THAT** the defendant's motion for summary judgment be, and the same hereby is, **GRANTED.**