

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-27-2007

# McEwen v. USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2797

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"McEwen v. USA" (2007). *2007 Decisions.* Paper 689.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/689

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No:  06-2797
_____

THERESA J. MCEWEN,

Appellant

v.

UNITED STATES OF AMERICA; JOHN/JANE DOE, 1-10 (a name being
fictitious representing one or more fictitious defendants);
ABC CORPORATION, 1-10, (a name being fictitious representing
one or more fictitious corporations); XYZ PARTNERSHIPS 1-10,
(a name being fictitious representing one or more fictitious partnerships)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 03-cv-00167)
District Judge:   Hon. Jerome B. Simandle
_____

Submitted Under Third Circuit LAR 34.1(a)
June 27, 2007

Before:   BARRY, FUENTES and JORDAN, *Circuit Judges.*

(Filed:  July 27, 2007)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Theresa McEwen appeals from an order, issued by the United States District Court for the District of New Jersey, granting the government's motion for summary judgment. She claims that there was yet in the case a genuine issue of material fact and that the granting of summary judgment was therefore reversible error. For the following reasons, we will affirm the District Court's order.

I.

We present the facts in the light most favorable to Ms. McEwen, the party against whom the order was entered. *Lindsey v. Caterpillar, Inc.*, 480 F.3d 202, 205 (3d Cir. 2007). On February 1, 1997, Kenyon Building Maintenance ("Kenyon") entered into a contract with the United States Department of the Army to provide custodial services at various locations at the Army's base at Fort Dix, New Jersey, including the Child Development Center ("CDC"). McEwen began working for Kenyon on October 30, 1997. She provided maintenance services at the CDC on a daily basis from 7:30 a.m. to 4:00 p.m.

Kenyon's contract with the Army required Kenyon to "furnish all labor, materials, equipment, [...] and supervision to perform [its] custodial services ... ." Appendix ("Appx.") at 56a. Those custodial services included maintaining the floors. The contract stated that Kenyon should "control the work situation to minimize safety hazards." *Id*. at 110a. The contract further provided that Kenyon would "comply with all pertinent provisions of the Army's Safety Regulations ... ." *Id*. at 109a. One of the safety regulations governing the CDC required the cleaning service to be of "hospital grade

1

quality." *Id*. at 161a. Those same regulations stated that caregiving employees at the CDC were precluded from providing custodial services, "with the exception of wiping tables, sweeping floors etc., after program activities and meal service, to maintain functional orderliness and cleanliness." *Id*.

On June 23, 1998, at approximately 7:52 a.m., McEwen claims that she slipped on a "moist" floor on her way to check supplies in the bathroom. *Id*. at 171a. She alleges that the floors were moist because "[i]t had been raining for a couple of days." *Id*. Apparently, the CDC had a leaky roof and air conditioning problems that resulted in slippery conditions on the linoleum floors during humid weather. Judy Beard, the teacher in whose classroom McEwen was injured, testified that she kept a mop in her room to clean up spills and the condensation that would collect on the floors. She stated that she took care of the floors in the morning to "help[] [McEwen] out," but that it was the cleaning staff's responsibility to maintain the floors if they were damp and to keep the building "safe and clean for the children." *Id*. at 271a, 275a, 279a.

The manager of the CDC, Darlene White, testified that the staff had mops they could use to remove the moisture, but that it "was also the day custodian's task to [...] run a dry mop [...] over the floors as needed." *Id*. at 250a. Moreover, White specifically recalled McEwen mopping the condensation on the floor in the room in which she later fell. McEwen's supervisor also indicated that McEwen's job requirements included mopping the floors. In contrast, McEwen testified that she only mopped the kitchen floor, and the night crew mopped the rest of the floors. However, in that same deposition,

2

McEwen stated that it was her responsibility to mop up water that leaked from the roof, if she was notified of the problem.[1]

McEwen filed an injury claim with the Department of the Army on March 24, 2000, asserting she was owed $2 million for "severe trauma" caused by her slipping "on a wet floor caused by a leaking roof ... ." *Id.* at 30a. On January 15, 2003, after her claim was denied, McEwen filed a civil action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671-2680, alleging that the government was negligent in failing to keep the CDC in a safe condition. The District Court granted the government's motion for summary judgment, holding that, because McEwen's employer was an independent contractor and her injuries "were the result of a risk inherent in the contracted work," the United States did not have a duty to protect her from the risk. *Id.* at 12a. In addition, the Court found that no employee of the United States sufficiently participated in, actively interfered with, or exercised control over the manner or method of the work being performed at the time of the injury.

The District Court had jurisdiction over this case under 28 U.S.C. §§ 1331 and 1346(b)(1). This Court has jurisdiction over McEwen's appeal under 28 U.S.C. § 1291.

II.

---

[1] Specifically, McEwen was asked, "Now, regardless as to whether someone directed you to do so or not, was it your understanding that your job responsibilities included cleaning up water that came from the leaky roof?" McEwen responded, "If someone had told me that there was a ton of water, I would get a bucket and a mop ... ." Appx. at 173a.

Federal Rule of Civil Procedure 56(c) provides that a District Court may grant summary judgment where "there is no genuine issue as to any material fact and [...] the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c). We apply the same test as the District Court, drawing all inferences in the light most favorable to the non-moving party. *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985).

McEwen is suing the government under the FTCA, which grants district courts exclusive jurisdiction over civil actions against the United States for personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment ... ." 28 U.S.C. § 1346(b)(1). The FTCA only allows liability on the part of the government in cases where "the United States, if a private person, would be liable ... in accordance with the law of the place where the act or omission occurred." *Id*. As a result, we apply New Jersey law to McEwen's claim.

According to the laws of New Jersey, a landowner has a duty to provide a reasonably safe place for employees of an independent contractor to work. *Izhaky v. Jamesway Corp.*, 478 A.2d 416, 417 (N.J. Super. Ct. App. Div. 1984). However, that duty "'does not entail the elimination of potential operational hazards which are obvious and visible to the invitee upon ordinary observation and which are part of or incidental to the very work the contractor was hired to perform.'" *Rigatti v. Reddy*, 723 A.2d 1283, 1286 (N.J. Super. Ct. App. Div. 1999) (quoting *Sanna v. Nat'l Sponge Co.*, 506 A.2d 1258, 1262 (N.J. Super. Ct. App. Div. 1986)); *see also Izhaky*, 478 A.2d at 418.

4

Additionally, in determining whether the landowner was negligent, courts should examine "the degree to which the landowner participated in, actively interfered with, or exercised control over the manner and method of the work being performed at the time of the injury." *Sanna*, 506 A.2d at 1262 (citing *Gibilterra v. Rosemawr Homes, Inc.*, 115 A.2d 553, 555 (N.J. 1955)).

The record indicates that the slippery floor conditions that caused McEwen to fall were obvious, known hazards. In her opening brief, McEwen admitted that "[t]he floor in the classroom was infamous for its slippery condition when it was either raining outside or humid during the warm months of the year." Appellant's Opening Brief at 5. She testified at her deposition that it had been raining for a couple of days prior to her fall, and that moisture and humidity had been building up on the inside of the CDC from the rain. These facts demonstrate that McEwen was well aware of the slippery condition of the floors in the CDC.

The record also shows that the slippery floor conditions were part of or incidental to the work McEwen was hired to perform. The contract between Kenyon and the Department of the Army stated that the custodial services Kenyon was to provide included maintaining the floors. The contract specified that Kenyon would "control the work situation to minimize safety hazards." Appx. at 110a. It further provided that Kenyon would comply with all applicable Army Safety Regulations, one of which stated that the caliber of the cleaning service at the CDC would be of "hospital grade quality." *Id*. at 109a, 161a. Although McEwen claims that she only mopped the kitchen floor

during the day, even she admitted that it was her responsibility to mop up water if she was notified of the problem.

New Jersey law also requires courts to examine the participation, interference, and control of landowners to determine whether landowners should be "implicated in negligence." *Sanna*, 506 A.2d at 1262. That is, landowners should be held liable when their participation, interference, or control creates a condition that causes an injury. *See id.* at 1262-63 (holding that because there was a question of fact regarding whether the scaffolding the landowner provided to an independent contractor was negligently maintained, judgment of involuntary dismissal was inappropriate where that scaffolding collapsed causing injury to an employee of an independent contractor); *Izhaky*, 478 A.2d at 418-19 (concluding that, where an employee of an electrical contractor sustained injuries from a live wire, the judgment in favor of the plaintiff was appropriate because a jury reasonably could have found that the defendant's preparatory carpentry work could have been the cause of the injury). McEwen argues the government participated in and interfered with her work because Beard routinely ran a drop mop over the condensation that would collect on the floors during the humid weather. However, Beard's actions did not cause the injury McEwen sustained. The floor was slippery because of the rain, the leaky roof, and the faulty climate control system, conditions of which McEwen was aware.

Alternatively, McEwen argues that routinely running a dry mop over the moist floors created a "shared duty" to keep the floor conditions safe. Appellant's Opening

6

Brief at 23. Thus, according to McEwen, by failing to mop the condensation off the floor, Beard caused her injury. This argument also fails, as the record plainly shows that the duty to maintain the floor belonged to Kenyon and hence to McEwen herself. The contract between Kenyon and the Department of the Army makes that clear, and McEwen's testimony indicates that she understood that her company had responsibility for maintaining the floor. The fact that a teacher at times mopped up condensation in her classroom did not strip that contractual duty from Kenyon or amend the contract to create a shared duty.

In short, McEwen, as an employee of Kenyon, cannot hold the government responsible for her injury caused by slippery floor conditions that she was well aware of and that it was her responsibility to remedy. Accordingly, we will affirm the District Court's grant of summary judgment against McEwen.