**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3207-21

PATRICIA WASHBOURNE,
INDIVIDUALLY, AND AS
AN ADMINISTRATRIX AD
PROSEQUENDUM FOR THE
ESTATE OF DARREN
WASHBROUNE,

      Plaintiff-Appellant,

v.

TOKIWA COSMETICS AMERICA,
LLC, BERKOWSKY AND
ASSOCIATES, INC., ANDERSEN
INTERIOR CONTRACTING, INC.,
JOVIN DEMO, INC., LAMANNA
ELECTRIC, INC., and
MID-ATLANTIC MECHANICAL, INC.,

      Defendants-Respondents,

and

ALLMARK DOOR COMPANY, LLC,
and CASTLE FIRE PROTECTION, INC.,

      Defendants.

_____

Submitted October 30, 2023 — Decided November 9, 2023

Before Judges Mawla and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-5859-19.

The Dratch Law Firm, PC, attorneys for appellant (Brian Michael Dratch, of counsel and on the briefs; Daniel A. Lebersfeld, on the briefs).

Marshall, Dennehey, Warner, Coleman & Goggin, attorneys for respondent Berkowsky and Associates, Inc. (Walter F. Kawalec, III, on the brief).

PER CURIAM

Plaintiff Patricia Washbourne appeals from a May 20, 2022 order granting summary judgment in favor of defendant Berkowsky and Associates, Inc., and dismissing her negligence complaint. We affirm.

The following facts were undisputed. Defendant was a general contractor hired to oversee renovations at a 155,000 square foot facility owned by Tokiwa Cosmetics America, LLC. The decedent Darren Washbourne was plaintiff's husband. He worked for Allmark Door Company, LLC, which was one of four subcontractors hired by defendant. Each subcontractor was responsible for a different aspect of the renovations. One subcontractor handled demolition, a second performed the plumbing and HVAC work, the third performed carpentry,

and Allmark removed, stored, and replaced the facility's high-speed roll-up doors.

Decedent suffered from diabetes and had peripheral neuropathy, which decreased sensation in his feet and caused him to be admitted to the hospital on two prior occasions with foot-related injuries. Plaintiff was deposed and testified decedent came home the night of November 20, 2018, and told her he stepped on a screw at a jobsite. He did not wear his work boots and instead wore loafers, and said he noticed the screw when he returned to his truck and heard metal scraping on the footboard. The screw penetrated the shoe and went into his foot. Decedent removed the screw and, with plaintiff's assistance, dressed the wound. Decedent then discarded the screw and the loafers. Two days later, decedent and his family gathered at his sister-in-law's home for Thanksgiving. That evening decedent became pale, nauseous, and developed a fever.

The next day, decedent went to the hospital. He called Allmark to inform them he was at the hospital and said he was injured at the Tokiwa jobsite. Medical reports from the hospital noted decedent's foot was swollen and that he had stepped on a screw at the jobsite. Decedent was treated and discharged, but remained ill and was readmitted to the hospital nearly two weeks later. He was diagnosed with cellulitis in his right foot. Doctors amputated a toe and treated

him for sepsis. Decedent was released six days later. However, the day after his release, plaintiff discovered him passed out on the floor. He underwent surgery to remove a pulmonary clot and eventually developed heart and kidney failure. Abdominal pain revealed bowel ischemia, and exploratory surgery discovered decedent had gangrenous areas in his small and large bowel, which physicians concluded were inoperable.

Decedent died the following day. The death certificate listed the cause of death as cardiogenic shock and pulmonary embolism related to an ischemic bowel. Plaintiff's medical expert opined the puncture from the screw set off a chain of events resulting in decedent's death.

Defendant argued for summary judgment on four grounds. The motion judge granted summary judgment on one of these grounds, finding defendant was not liable to subcontractors for known and obvious hazards incidental to their job. Although decedent only noticed the screw when he returned to his truck, the judge granted plaintiff every favorable inference and assumed the screw was from the jobsite. Regardless, he reasoned as follows:

> [T]he duty to provide a reasonably safe place in which to work is relative to the nature of the invited endeavor and does not entail the elimination of potential operational hazards[,] which are obvious and visible to the invitee . . . upon ordinary observation.

A stray screw laying on the floor is obvious and visible upon ordinary observation . . . this is especially so when the invitee is an experienced laborer hired either to correct the very danger present or to perform his task amidst the visible hazards.

[Decedent] was . . . new to Allmark, but he has been in this business for a[]while. He's familiar with worksites. He's familiar with construction sites. He knows the value of wearing his work boots . . . because there are sharp debris at worksites . . . . As clean as you keep a worksite, there is always the possibility of that . . . .

On appeal, plaintiff argues: (1) there was sufficient evidence to show decedent sustained his injury at the jobsite; (2) the motion judge's ruling the screw was an open and obvious hazard inherent to the nature of decedent's work was erroneous as a matter of law; (3) the judge's ruling that a liability expert was required to opine on the standard of care was error; and (4) the judge correctly refused to grant summary judgment on grounds of spoliation because plaintiff discarded the screw and the sock. As we noted, the judge's opinion is based on the second argument. Therefore, the third point raised by plaintiff is irrelevant. Moreover, we decline to address the first argument because the judge assumed the screw was from the jobsite. Plaintiff prevailed on the fourth argument, which is also irrelevant to our considerations.

5

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The determination requires the motion judge consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540 (1995). "[W]hen the evidence 'is so one-sided that one party must prevail as a matter of law,' . . . the trial court should not hesitate to grant summary judgment." Ibid. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). "[W]e review the trial court's grant of summary judgment de novo[,] under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016).

"[A] general contractor enjoy[s] broad immunity from liability for injuries to an employee of a subcontractor resulting from either the condition of the premises or the manner in which the hired work [is] performed." Tarabokia v. Structure Tone, 429 N.J. Super. 103, 112-13 (App. Div. 2012); see also Wolczak

v. Nat'l Elec. Prod. Corp., 66 N.J. Super. 64, 75 (App. Div. 1961) ("The duty to provide a reasonably safe place in which to work is relative to the nature of the invited endeavor and does not entail the elimination of potential operational hazards which are obvious and visible to the invitee upon ordinary observation."). This immunity is based on the fact "that a general contractor 'may assume that the independent contractor and [their] employees are sufficiently skilled to recognize the dangers associated with their task and adjust their methods accordingly to ensure their own safety.'" Tarabokia, 429 N.J. Super. at 113 (quoting Accardi v. Enviro-Pak Sys. Co., 317 N.J. Super. 457, 463 (App. Div. 1999)). Exceptions to this general rule include where the general contractor retains control of the manner and means of work or furnishes defective equipment. Ibid. See Izhaky v. Jamesway Corp., 195 N.J. Super. 103, 106 (App. Div. 1984).

Beyond these exceptions, determining the existence of "a duty 'involves identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'" Alloway v. Bradlees, Inc., 157 N.J. 221, 230 (1999) (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)). "The analysis is both very fact-specific and principled;

it must lead to solutions that properly and fairly resolve the specific case and generate intelligible and sensible rules to govern future conduct." Hopkins, 132 N.J. at 439.

Plaintiff cites Sanna v. National Sponge Company[1] and Izhaky, and argues the motion judge could not grant summary judgment on grounds the hazard was open and obvious because, at best, this "merely raises an issue of contributory negligence, which . . . can only be resolved by the jury." Plaintiff's reliance on these cases is misplaced. In Sanna, the property owner contributed to supplying the components that injured the plaintiff. 209 N.J. Super. at 69. In Izhaky, the defendant landowner involved itself in the work, thus "remov[ing] the limited immunity" applicable to general contractors. 195 N.J. Super. at 107. Here, defendant neither retained control over the manner and means of the work nor provided the work equipment.

None of the Hopkins factors necessary to establish a duty exist here. Decedent was an employee of a wholly owned subcontractor and had no relationship to defendant. The nature of the risk, namely, that decedent would encounter a screw during renovations at a massive jobsite involving several other subcontractors, was not so unusual as to require us "to place the burden of

---

[1] 209 N.J. Super. 60 (App. Div. 1986).

8

preventing the harm upon . . . defendant." <u>Davis v. Devereux Found.</u>, 209 N.J. 269, 296 (2012). There is no evidence defendant did not exercise care such that the presence of a screw would not be an obvious and visible hazard at such a jobsite. Decedent was not wearing his work boots, despite his medical condition and history. Finally, under the facts presented here, we are unconvinced upending the immunity afforded general contractors by ascribing a duty to defendant would meet the public interest.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3207-21