2014 UT App 48

**Josue CASTELLANOS, Plaintiff and Appellant,**

v.

**TOMMY JOHN, LLC, Defendant and Appellee.**

No. 20120599–CA.

Court of Appeals of Utah.

Feb. 27, 2014.

Jacob S. Gunter, Provo, Attorney for Appellant.

Michael G. Brady, Attorney for Appellee.

Judge CAROLYN B. McHUGH authored this Opinion, in which Judges STEPHEN L. ROTH and MICHELE M. CHRISTIANSEN concurred.

McHUGH, Judge:

¶1 Plaintiff Josue Castellanos appeals from the district court's grant of summary judgment in favor of defendant Tommy John, LLC (Tommy John) on Castellanos's claims for negligent hiring and for vicarious liability based on intentional torts committed by a security company's employees. We affirm.

## BACKGROUND [1]

¶2 On August 14, 2009, Castellanos was involved in a physical altercation with security guards at a bar and restaurant owned and operated by Tommy John (the establishment). The security guards were employees of Thor Staffing, a company that had contracted with Tommy John to provide security services at the establishment. Tommy John and Thor Staffing had entered into an Independent Contractor and Work for Hire Agreement (the Agreement), which identified Thor Staffing as an independent contractor with the responsibility to determine the best methods and procedures necessary to perform its services.[2] The parties agree that

---

1. "Because we are reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to ... the nonmoving party." *See Magana v. Dave Roth Constr.*, 2009 UT 45, ¶5, 215 P.3d 143 (citation and internal quotation marks omitted). Accordingly, we recite the facts in the light most favorable to Castellanos.

2. The Agreement stated, among other things,

10.1) In performing the Work described in this Agreement and in Schedule A, Contractor [Thor Staffing] will employ Contractor's best technical procedures, skill, and judgment. Contractor will perform the Work in a manner consistent with Client[ Tommy John]'s best interests.
10.2) Contractor will provide the Work as described in Schedule A that conforms to the specifications agreed upon between Client and Contractor.

Tommy John did not provide any guidance or training to, or impose any rules or regulations controlling the actions of, Thor Staffing's security guards.

¶ 3 In 2010, Castellanos filed suit against Tommy John, alleging that he suffered physical and emotional injuries as a result of being forcibly removed from the establishment by the security guards.[3] Based on the theory of respondeat superior, Castellanos alleged that Tommy John was liable for the security guards' intentional torts, including assault, battery, and false imprisonment. Castellanos also alleged that Tommy John was liable for its own negligence in the hiring, supervision, and retention of the individual security guards. But Castellanos did not allege that Tommy John was negligent in its hiring, supervision, and retention of Thor Staffing. Tommy John later filed a motion for summary judgment, arguing that it could not be held liable for the intentional torts of the security guards, because they were employees of an independent contractor, Thor Staffing. Tommy John also claimed that it was not liable for the acts of Thor Staffing, because it did not retain control over the manner of Thor Staffing's performance and because Tommy John did not participate in Thor Staffing's expulsion of Castellanos from the establishment. Finally, Tommy John asserted that it was not negligent in hiring, supervising, and retaining the individual security guards, because, as the employer of an independent contractor, it had no responsibility to exercise supervisory control over Thor Staffing or its hiring practices.

¶ 4 In opposition to the motion for summary judgment, Castellanos argued that, as a business owner, Tommy John had a nondelegable duty to keep its premises safe and, therefore, Tommy John was liable for Thor Staffing's breach of that duty. Castellanos also asserted that Tommy John could be vicariously liable for work done by Thor Staffing because security guard work is inherently dangerous. Finally, Castellanos argued that disputed material facts precluded summary judgment on his negligent hiring, supervision, and retention claim.

¶ 5 The district court granted summary judgment to Tommy John on all claims and certified the judgment as final[4] The district court ruled that "under these circumstances, where Thor Staffing maintained an independent contractor status and Tommy John was not involved and did not retain control over how Thor Staffing performed its security services, Tommy John cannot be held vicariously liable for the acts of Thor Staffing or its security guards." Castellanos timely appeals.

ISSUES AND STANDARD OF REVIEW

¶ 6 Castellanos challenges the district court's grant of summary judgment on two grounds. First, Castellanos contends that Tommy John is vicariously liable for the acts of Thor Staffing's employees under an exception to the general rule that an employer of an independent contractor is not liable for the harmful acts of its contractor. Second, Castellanos contends that the district court erred when it held as a matter of law that Tommy John was not directly negligent in hiring, supervising, and retaining the security guards.

¶ 7 "[S]ummary judgment is appropriate only when 'there is no genuine issue as to any material fact ... and the moving party is

---

.... 11.1) Contractor is an independent contractor. Contractor has not previously been employed by Client, and Contractor is not an agent or employee of Client. Contractor shall have no right to bind Client, and Client shall not be liable on account of any action or inaction on the part of Contractor, except as otherwise specifically provided in this Agreement or an attached Schedule. .... 11.5) Contractor possesses the requisite skill and experience to complete the Work in a professional and timely manner in accordance with industry standards. Contractor shall receive no training from Client.

3. Castellanos also filed suit against Thor Staffing, the unnamed security guards, and the managing member of Tommy John. The managing member was later dismissed as a party, and Thor Staffing failed to appear. Castellanos and Tommy John are the only parties to this appeal.

4. The district court heard oral arguments on Tommy John's summary judgment motion, but a transcript of that hearing is not in the record on appeal.

entitled to a judgment as a matter of law.'" *Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, ¶ 8, 301 P.3d 984 (omission in original) (quoting Utah R. Civ. P. 56(c)). "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted). And "because negligence cases often require the drawing of inferences from the facts, which is properly done by juries rather than judges, summary judgment is appropriate in negligence cases only in the clearest instances." *Price v. Smith's Food & Drug Ctrs., Inc.*, 2011 UT App 66, ¶ 7, 252 P.3d 365 (citation and internal quotation marks omitted).

## ANALYSIS

### I. Exceptions to the Nonliability Rule

¶ 8 In Utah, "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." *Magana v. Dave Roth Constr.*, 2009 UT 45, ¶ 22, 215 P.3d 143 (citation and internal quotation marks omitted). The rationale for this rule is that "where the principal employer does not control the means of accomplishing the contracted work, the contractor is the proper party to be charged with the responsibility for preventing the risk [arising out of the work], and administering and distributing it." *Thompson v. Jess*, 1999 UT 22, ¶ 13, 979 P.2d 322 (alteration in original) (citation and internal quotation marks omitted). This general rule is subject to exceptions, including (1) where the employer of the independent contractor retains control over the work directly resulting in the injury, *id.* ¶¶ 14, 18; (2) where the work is inherently dangerous, *id.* ¶¶ 14, 29; and (3) where the injury is the result of a nondelegable duty owed by the employer to the injured person, *see Price*, 2011 UT App 66, ¶ 26, 252 P.3d 365. Castellanos claims that an exception to the general nonliability rule is present here and, therefore, that the district court improperly granted summary judgment in favor of Tommy John. For the reasons discussed below, we agree with the district court that none of these exceptions precluded summary judgment in this case.

### A. Retained Control

¶ 9 In granting summary judgment, the district court held as a matter of law that Tommy John is not vicariously liable for Thor Staffing's intentional torts under a theory of retained control. Pursuant to the retained control doctrine, the employer of an independent contractor "remains liable for the contractor's actions when the employer participate[s] in or control[s] the manner in which the contractor's work is performed, and therefore owes [a] duty of care concerning the safety of the manner or method of performance implemented." *Magana*, 2009 UT 45, ¶ 23, 215 P.3d 143 (alterations in original) (citation and internal quotation marks omitted). To determine whether an employer is liable under the retained control doctrine, Utah courts apply the active participation standard. *Id.* ¶ 24. "Under that standard, an employer has a duty to ensure the safety of its contractor's work where the employer 'actively participates' in the contractor's work." *Id.* (quoting *Thompson*, 1999 UT 22, ¶ 19, 979 P.2d 322). The employer "actively participates" in the contractor's work if the employer "directs that the contracted work be done by use of a certain mode or otherwise interferes with the means and methods by which the work is to be accomplished." *Id.* (citation and internal quotation marks omitted). An employer that merely exercises control over the desired result of the contractor's work will not be held to have actively participated. *Thompson*, 1999 UT 22, ¶ 24, 979 P.2d 322. Furthermore, active participation is insufficient unless it relates to "the injury-causing aspect of the work." *Magana*, 2009 UT 45, ¶ 27, 215 P.3d 143 (emphasis, citation, and internal quotation marks omitted).

¶ 10 In this case, the district court ruled that the retained control exception is inapplicable because "Tommy John was not involved and did not retain control over how Thor Staffing performed its security services."

The undisputed facts support the district court's conclusion.

¶ 11 Castellanos argued that summary judgment was inappropriate because there is a factual dispute as to the extent Tommy John controlled the hours the security guards were requested to work and the locations within the establishment where the security guards were supposed to work. Castellanos also provided deposition testimony from a friend (Friend) who was expelled from the establishment with Castellanos, stating that after the security guards had removed them the owner pointed at Castellanos's friend, identifying him for the police who had arrived at the scene. Friend further indicated that the owner later walked over to him, took his picture, and told him never to return to the establishment. According to Castellanos, this evidence establishes that the owner had retained some control over security activities at the establishment. However, such facts are insufficient to establish retained control because they do not relate to the injury-causing aspects of the work, i.e., the means and methods by which the security guards removed Castellanos from the establishment. *See id.* ¶¶ 26–28.

¶ 12 Castellanos has advanced no facts that could establish that Tommy John actively participated in how Thor Staffing or its security guards carried out their security duties. Instead, the undisputed facts prove the opposite proposition. For example, the Agreement expressly provided that Tommy John would not provide any training to Thor Staffing and that Thor Staffing would utilize its best procedures, skill, and judgment in carrying out its security duties. Although Castellanos argued to the district court that the Agreement was invalid, he acknowledged that Tommy John did not have any procedures or regulations in place regarding Thor Staffing's work and that Tommy John did not instruct or train Thor Staffing or Thor Staffing personnel on how to remove patrons from the establishment. Therefore, Castellanos concedes that Tommy John did not actively participate in the means and methods used to carry out the injury-causing aspect of the work. Accordingly, the district court was correct in concluding that there are no material issues of disputed fact that preclude summary judgment under the retained control exception to the general nonliability rule.

B. Inherently Dangerous Work

¶ 13 Next, Castellanos argues that the district court erred in granting summary judgment because the facts of this case fall within the exception to the nonliability rule that an employer remains "vicariously liable when the work done by an independent contractor is inherently dangerous." Castellanos relies on section 427 of the Restatement (Second) of Torts, which imposes vicarious liability on an employer with knowledge of the dangerous nature of the work:

> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

Restatement (Second) of Torts § 427 (1965).[5] Castellanos acknowledges that Utah's appellate courts have not formally adopted section 427. However, he asserts that Utah has recognized a form of the inherently dangerous work doctrine in *Gleason v. Salt Lake City,* 94 Utah 1, 74 P.2d 1225 (1937).

¶ 14 In *Gleason,* the supreme court recognized that the general rule of nonliability does not apply "where that work was intrin-

---

5. Section 59 of the Restatement (Third) of Torts embodies the same principles. *See* Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 59 (2012) ("An actor who hires an independent contractor for an activity that the actor knows or should know poses a peculiar risk is subject to vicarious liability for physical harm when the independent contractor is negligent as to the peculiar risk and the negligence is a factual cause of any such harm within the scope of liability."); *see also id.* § 59 cmt. a (explaining that section 59 expresses both the peculiar risk doctrine and the inherently dangerous activity doctrine); Restatement (Second) of Torts § 416 cmt. a (1965) (noting the subtle distinction between the two variants of "the same general rule" but noting that the two doctrines "have been applied more or less interchangeably").

sically dangerous, and the injury was a consequence of the failure of the contractor to take appropriate precautions." *Id.* at 1232 (citation and internal quotation marks omitted); *see also Sullivan v. Utah Gas Serv. Co.,* 10 Utah 2d 359, 353 P.2d 465, 466–67 (1960) (acknowledging the validity of the rule but concluding that the case did not fall within it); *Dayton v. Free,* 46 Utah 277, 148 P. 408, 411–12 (1914) (same). However, Utah courts have never formally determined that the Restatement's formulation of the rule announced in *Gleason* accurately states Utah law. *See Poteet v. White,* 2006 UT 63, ¶ 8, 147 P.3d 439 ("We have not previously considered whether to adopt [section 427] into the law of Utah. And we decline to consider adopting [it] here because it is unnecessary to our resolution of the case."); *Thompson v. Jess,* 1999 UT 22, ¶¶ 14, 27, 30, 979 P.2d 322 (discussing section 427 but declining to apply it when an employee of an independent contractor is injured); *Johnson v. Department of Transp.,* 2004 UT App 284, ¶ 11 n. 3, 98 P.3d 773 (declining to address the inherently dangerous work doctrine due to resolution of the issues based on delegability and retained control), *judgment aff'd,* 2006 UT 15, 133 P.3d 402.

■ ¶ 15 In *Thompson v. Jess,* 1999 UT 22, 979 P.2d 322, our supreme court discussed sections 413, 416, and 427 of the Restatement (Second) of Torts, which address the peculiar risk and inherently dangerous exceptions to the nonliability rule, but concluded none of them were applicable to a claim filed by an injured employee of the independent contractor. *Id.* ¶¶ 27–33. The court explained that the purpose of the exceptions "is 'to ensure that innocent third parties injured by the negligence of an independent contractor hired by a landowner to do inherently dangerous work on the land

would not have to depend on the contractor's solvency in order to receive compensation for the injuries.'" *Id.* ¶ 29 (quoting *Privette v. Superior Court,* 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721, 725 (1993)). We addressed *Thompson*'s treatment of the Restatement in *Berrett v. Albertsons Inc.,* 2012 UT App 371, 293 P.3d 1108, *cert. granted,* 304 P.3d 469 (Utah 2013), *stipulated motion to dismiss granted* (Utah Dec. 16, 2013) (No. 20130165). In *Berrett,* we stated that we saw in *Thompson* "no hostility to sections 413, 416, and 427 of the Restatement in principle" and noted that our supreme court "did not suggest that these sections conflict with Utah law." *Id.* ¶ 35. We further indicated that the supreme court in *Thompson* "did not describe them as inconsistent with Utah's general rule of nonliability for employers, but rather as 'exceptions' to it." *Id.* Therefore, we concluded that the principles of section 413 of the Restatement (Second) of Torts— which applies the peculiar risk doctrine, a variant of the inherently dangerous work doctrine, in the context of direct liability— are part of Utah's common law of negligence.[6] *Id.* ¶¶ 25, 31, 37.

■ ¶ 16 Although the question of whether the inherently dangerous work doctrine in section 427 is also part of Utah's common law was not before us in *Berrett,* Castellanos argues that the policies discussed in *Thompson* and *Berrett* favor the adoption and application of section 427 here. Castellanos contends, therefore, that the inherently dangerous work doctrine as expressed in section 427 should have prevented the district court from entering summary judgment against Castellanos. Tommy John responds that regardless of whether Utah has adopted section 427, security guard work is not inherently dangerous.[7] Because we

---

6. In his reply brief, Castellanos argues for reversal based on the peculiar risk doctrine. While he mentions this doctrine in his opening brief on appeal, he does not make a separate argument for reversal based on that doctrine in his opening brief. Nor does it appear that he sufficiently raised this argument before the district court. Accordingly, Castellanos has waived this issue, and we do not consider whether it is applicable here or whether there is any relevant distinction between the two doctrines. *See Allen v. Friel,*

2008 UT 56, ¶ 8, 194 P.3d 903; *In re Discipline of Alex,* 2004 UT 81, ¶ 21 n. 2, 99 P.3d 865.

7. Tommy John argues that Castellanos did not preserve his argument that security guard work is inherently dangerous, because he failed to raise the issue in his complaint. However, Castellanos raised and briefed section 427 in his memorandum in opposition to Tommy John's summary judgment motion, Tommy John responded to that argument without objecting to its absence from the complaint, and the district

agree with Tommy John that the provision of security services is not inherently dangerous work, we need not decide whether section 427 of the Restatement (Second) of Torts is consistent with the law of Utah.

¶ 17 According to Castellanos, the nature of security work inherently requires physical force, and the "risk of negligently or unlawfully removing people from a bar is a risk . . . inherent to providing security guards at a bar." In support, he relies primarily on *Pusey v. Bator*, 94 Ohio St.3d 275, 762 N.E.2d 968 (2002), in which the Supreme Court of Ohio held,

> [W]hen an employer hires an independent contractor to provide armed security guards to protect property, the inherently-dangerous-work exception is triggered such that if someone is injured by the weapon as a result of a guard's negligence, the employer is vicariously liable even though the guard responsible is an employee of the independent contractor.

*Id.* at 975; *see also Doe v. Exxon Mobil Corp.*, 573 F.Supp.2d 16, 30 (D.D.C.2008) (stating in the context of a negligent supervision claim that "providing armed security in a *war-like environment*" "might fairly be deemed 'inherently dangerous' as a matter of law" (emphasis added)); *Savinsky v. Bromley Grp., Ltd.*, 106 N.M. 175, 740 P.2d 1159, 1162 (N.M.Ct.App.1987) (concluding that summary judgment for defendant was inappropriate where evidence suggested the armed security guard was engaged in inherently dangerous work).

¶ 18 We first note that there is nothing in the record here which suggests the security guards provided by Thor Staffing were armed or that Castellanos was injured by a weapon. Furthermore, other courts that have considered the issue of whether the provision of security services is inherently dangerous have reached the opposite conclusion from the Ohio court in *Pusey. See, e.g., Gordon v. Jones*, No. 3:08CV–P460–S, 2010 WL 3341206, at *3 (W.D.Ky. Aug. 20, 2010) (concluding that a bus station operator was not liable for the torts committed by an off-duty police officer employed by an independent-contractor security company because "the use of security guards is not an inherently dangerous activity"); *Abbott v. Town of Salem*, No. 05–cv–127–SM, 2007 WL 764483, at *3–4 (D.N.H. Mar. 12, 2007) (concluding that a mall manager was not liable for torts committed by the employees of an independent-contractor security company because the "provision of security services . . . does not constitute an inherently dangerous activity"); *Schreiber v. Camm*, 848 F.Supp. 1170, 1177–80 (D.N.J.1994) (determining that an estate owner was not liable for the torts committed by the employees of an independent-contractor security company because "the deployment of an armed security guard is not an inherently or abnormally dangerous activity, absent knowledge (imputed or actual) of the dangerous propensities of the security guard"); *Brien v. 18925 Collins Ave. Corp.*, 233 So.2d 847, 848–49 (Fla.Dist.Ct. App.1970) (declining to hold that armed security work is inherently dangerous and instead holding that "in the absence of an allegation that the owner had or ought to have had notice of the dangerous propensities of the guard employed by the security corporation, the owner will not be liable for consequences of the allegedly negligent manner in which the employee of the independent contractor performed his duties").

¶ 19 Decisions from Utah have indicated that certain types of work are universally recognized as inherently dangerous. *Compare Sullivan v. Utah Gas Serv. Co.*, 10 Utah 2d 359, 353 P.2d 465, 466–67 (1960) (indicating that the installation of gas pipes may be inherently dangerous but concluding that the inherently dangerous doctrine did not apply, because the defendant and pipe installer had only a "seller and purchaser" relationship), *and Dayton v. Free*, 46 Utah 277, 148 P. 408, 412 (1914) (suggesting that underground blasting is inherently dangerous but that an *employee* of an independent contractor may not recover against the employer of the independent contractor on that basis), *with Long v. Smith Food King Store*, 531 P.2d 360, 362

court addressed it, albeit briefly, and rejected it. Accordingly, the argument is adequately pre-

served.

(Utah 1973) (holding that serving free samples of pie in a grocery store is not an inherently dangerous activity), *and Gleason v. Salt Lake City,* 94 Utah 1, 74 P.2d 1225, 1233 (1937) (concluding that pumping water out of an elevator shaft is not intrinsically dangerous for purposes of vicarious liability). Decisions in other contexts suggest that the category of activities that qualify as inherently dangerous is narrow. *See Groen v. Tri-O-Inc.,* 667 P.2d 598, 600, 602 (Utah 1983) (explaining that " '[f]lying wire' requires a helicopter to fly sideways alongside electrical towers ... [to] thread[ ] a 100–foot length of lead rope connected to a steel cable along the towers" and stating that the evidence in the record supported the conclusion that the work is "inherently dangerous"); *Brigham v. Moon Lake Electric Ass'n,* 24 Utah 2d 292, 470 P.2d 393, 395 (1970) ("A high tension transmission wire is one of the most dangerous things known to man."); *Henrie v. Rocky Mountain Packing Corp.,* 113 Utah 444, 202 P.2d 727, 729–30 (1949) (listing "mining, quarrying, railroading, and manufacturing of explosives and deleterious chemicals" as among the types of work that are "universally considered dangerous to life, health, and safety"); *Fazio v. Corey Bros. Constr. Co.,* 43 Utah 120, 134 P. 747, 750 (1913) ("[T]he use of dynamite in blasting is inherently dangerous....").

¶ 20 Furthermore, the Restatement (Second) of Torts explains that for work to be considered "inherently" or "intrinsically" dangerous, it is necessary that the work

> involve[ ] a risk, recognizable in advance, of physical harm to others which is inherent in the work itself, or normally to be expected in the ordinary course of the usual or prescribed way of doing it, or that the employer [have] special reason to contemplate such a risk under the particular circumstances under which the work is to be done.

Restatement (Second) of Torts § 427 cmt. b (1965). Thus, the inherently dangerous exception to the nonliability rule has no application where the risk is "not inherent in the work itself or in the ordinary or prescribed way of doing it, and not reasonably to be contemplated by the employer." *Id.* § 427 cmt. d. The Restatement's examples of inherently dangerous activities include work that involves the demolition of a high chimney, excavation of a highway, use of a scaffold to paint a wall above a sidewalk, and "use of instrumentalities" such as fire or explosives. *See id.* § 427 cmt. c. The Restatement explains that while some such activities are not "highly dangerous," they all involve a risk, recognizable in advance, that danger inherent in the work itself may cause harm to others. *Id.*

¶ 21 Here, Castellanos has not presented any evidence indicating that contracting with an independent security company involves a risk of physical harm to Tommy John's patrons which Tommy John should have recognized in advance, and which is inherent in the security work itself or normally expected in the ordinary course of the usual or prescribed way of doing security work. Indeed, the very purpose of hiring an independent-contractor security company is to reduce the risk that patrons of a business will inflict harm on other patrons or property. Under these circumstances, "[t]here is some irony in the proposition that providing security is an inherently dangerous activity with respect to third parties." *Powell v. City & County of Denver, Colo.,* 973 F.Supp. 1198, 1203 n. 3 (D.Colo.1997). Furthermore, the ordinary course or prescribed way of performing security work does not inherently involve intentional violence by the security guards against patrons of the establishment they were hired to secure. In *Schreiber v. Camm,* 848 F.Supp. 1170 (D.N.J.1994), the federal district court for New Jersey explained this distinction in its decision dismissing the employer of an independent-contractor security company from an action by lessors of the employer's estate who were mistakenly shot by a security guard employed by the security company. *Id.* at 1172–73. The court stated, "The negligence in this case was not that the guard failed to protect the tenants from harm from third parties, but that in doing so he injured them himself. This negligence is clearly foreign to the normal or contemplated risks of doing the work." *Id.* at 1177 (citation and internal quotation marks omitted).

¶ 22 We conclude that the risk of the intentional infliction of physical injuries on patrons by the security guards hired by an independent-contractor security company is not inherent in security work itself. Likewise, it is not normally expected in the ordinary course of the usual or prescribed way of performing security work. Therefore, the inherently dangerous work exception to the nonliability rule [8] would not apply here because the provision of security services is not inherently dangerous.[9]

## C. Nondelegable Duty

¶ 23 Next, Castellanos claims that Tommy John is vicariously liable because business owners have a nondelegable duty to keep their premises safe. " 'A "nondelegable duty" means that an employer of an independent contractor, by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties negligently performed.' " *Price v. Smith's Food & Drug Ctrs., Inc.*, 2011 UT App 66, ¶ 26, 252 P.3d 365 (quoting 41 Am.Jur.2d *Independent Contractors* § 43 (2005)). In support of his argument that Tommy John could not delegate its duty to Thor Staffing, Castellanos cites our decision in *Price*. In contrast, Tommy John

asserts that *Price* is not controlling because it is "a premises liability case involving an alleged temporary unsafe *condition* of the premises itself … rather than any alleged direct *activity* of an independent contractor on the premises causing injury to a patron."

¶ 24 In *Price*, a third-party vendor employed a food demonstrator who offered food samples to customers from a table the vendor's employee set up in a Smith's grocery store. *Id.* ¶ 2. Shortly after the vendor's employee disassembled the sample table for the day, the plaintiff slipped on a puddle of water near where the table had been. *Id.* The plaintiff sued Smith's under a theory of direct liability based on Smith's failure to maintain the premises in a reasonably safe condition and on a theory of vicarious liability based on the vendor's negligence. *Id.* ¶ 5. The district court granted Smith's motion for summary judgment, concluding that the plaintiff could not recover on her direct liability claim because she had failed to establish that Smith's had constructive or actual notice of the temporary dangerous condition on the premises. *Id.* With respect to the plaintiff's vicarious liability claim, the district court ruled that Smith's was not liable because

8. We express no opinion on whether the Restatement's formulation of the inherently dangerous work doctrine in section 427 is consistent with Utah law. *See generally Huddleston v. Union Rural Electric Ass'n*, 841 P.2d 282, 287–88, 295–99 (Colo.1992) (en banc) (providing contrary views between the majority and dissent about the wisdom of the inherently dangerous exception as expressed in section 427).

9. In this case, Castellanos alleges that Tommy John is vicariously liable for the intentional torts of assault, battery, and false imprisonment committed by the security guards. Some courts have determined that section 427 "only creates a rule of vicarious liability for an independent contractor's negligence in the performance of an inherently dangerous activity, not for an independent contractor's intentional torts." *Powell v. City & County of Denver, Colo.*, 973 F.Supp. 1198, 1201, 1203 (D.Colo.1997) (refusing to hold a clinic liable for assault, battery, and intentional infliction of emotional distress committed by an independent security contractor and his employee); *see also Campbell v. Security Pac. Nat'l Bank*, 62 Cal.App.3d 379, 133 Cal.Rptr. 77, 82 (1976) (refusing to hold bank liable for the intentional acts of independent contractor hired to repossess an automobile because the exception in section 427 is limited to the negligent acts of an independent contractor); Restatement (Second) of Torts § 427 & cmts. a, d (1965) (discussing the inherently dangerous work exception in terms of negligence). In contrast, other jurisdictions have concluded, without employing section 427, that the employer of an independent-contractor security company is liable for the intentional torts of the company's employees. *See, e.g., Nash v. Sears, Roebuck & Co.*, 12 Mich.App. 553, 163 N.W.2d 471, 473–75 (1968) (holding store owners liable for false arrest, false imprisonment, assault, and battery committed by security guard hired by independent-contractor security company but noting that the inherently dangerous activity doctrine did not apply because the case involved intentional torts), *rev'd on other grounds*, 383 Mich. 136, 174 N.W.2d 818 (1970); *Zentko v. G.M. McKelvey Co.*, 88 N.E.2d 265, 268 (Ohio Ct.App.1948) (holding store owners liable for malicious prosecution committed by security guard hired by independent-contractor security company); *see also* Robert A. Brazener, Annotation, *Liability of One Contracting for Private Police or Security Service for Acts of Personnel Supplied*, 38 A.L.R.3d 1332, 1341–49 (1971 & Supp. 2013) (collecting cases). Here, neither party has adequately briefed this issue, and we therefore do not consider it further. *See* Utah R.App. P. 24.

neither the vendor nor the food demonstrator were Smith's employees. *Id.* On appeal, we explained that there is an exception to the general rule that an employer is not liable for the torts of an independent contractor where the "'owner of the premises ... [has] a nondelegable duty to keep the premises reasonably safe for business invitees.'" *Id.* ¶ 26 (alteration and omission in original) (quoting *Sullivan v. Utah Gas Serv. Co.*, 10 Utah 2d 359, 353 P.2d 465, 466 (1960)).[10] We further instructed that an owner may be "liable if it delegates that duty to an independent contractor, who then breaches it." *Id.* (citing 41 Am.Jur.2d *Independent Contractors* § 45 (2005) ("Store operators and other business owners have a nondelegable duty to the public to keep their place of business in a reasonably safe condition and free from danger of personal injury.")). Applying these principles in *Price*, we concluded that summary judgment was properly granted to Smith's on the vicarious liability issue because it had not hired the third-party vendor to maintain, repair, or inspect its floors and Smith's had not offered a defense based on a delegation of its duty to keep the premises safe. *Id.* ¶¶ 27–28.

¶ 25 Here, Castellanos argues that Tommy John attempted to delegate to Thor Staffing its obligation to keep the premises reasonably safe and also asserts that Tommy John is using that improper delegation as a defense to this action. He contends, therefore, that Tommy John falls within the exception to the rule of nonliability for the acts of independent contractors recognized in *Price*. In response, Tommy John argues that *Price* stands for the proposition that a property owner may not escape liability for failing to maintain its premises in a reasonably safe *condition* by delegating that duty to an independent contractor and that security guard services are not a *condition* on the premises. *See Thomas v. Oregon State Police*, No. 6:12–cv–01167–AA, 2013 WL 3280246, at *2 (D.Or. June 25, 2013) (limiting landowner's nondelegable duty to keep its premises safe from "defects in the property itself" and holding that landowner was not liable for the

tortious acts of the security guards employed by independent-contractor security company).

¶ 26 Castellanos points us to an Arizona Court of Appeals decision, *Simon v. Safeway, Inc.*, 217 Ariz. 330, 173 P.3d 1031 (Ariz.Ct. App.2007), and asks us to reject Tommy John's argument on the basis of that court's analysis. In *Simon*, the plaintiff sued Safeway for injuries he sustained during an altercation with a security guard who was working at a Safeway grocery store. *Id.* at 1032–33. As in this case, the security guard in *Simon* was an employee of a company that had contracted to provide security services for Safeway. *Id.* The plaintiff claimed that Safeway was vicariously liable because, as a business owner it had a nondelegable duty to provide safe premises for its business invitees, including keeping such invitees safe from the torts of independent contractors retained to work on the premises. *Id.* at 1033, 1036. The Arizona Court of Appeals agreed with the plaintiff that the facts presented were "more akin to premises liability ... than independent contractor liability." *Id.* at 1037. It therefore considered section 344 of the Restatement (Second) of Torts helpful to its analysis. *Id.* That section provides,

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons ..., and by the failure of the possessor to exercise reasonable care to (a) discover that such acts are being done or are likely to be done, or (b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Restatement (Second) of Torts § 344 (1965). The *Simon* court also referenced a comment to the Restatement, which states, "The rule ... applies to the acts of independent contractors ... who are employed or permitted

---

**10.** In *Sullivan v. Utah Gas Service Co.*, 10 Utah 2d 359, 353 P.2d 465 (1960), our supreme court cited section 422 of the Restatement (First) of Torts. *Id.* at 466–67; Restatement (First) of

Torts § 422 (1934) (discussing the liability of an employer of an independent contractor for the contractor's work on buildings or other structures on the land).

to carry on activities upon the land. The possessor is required to exercise reasonable care, for the protection of the public who enter, to supervise the activities of the contractor ..., including ... his methods." *Id.* § 344 cmt. c; *see also Simon*, 173 P.3d at 1038. The Arizona court disagreed with Safeway's argument that section 344 pertains only to dangerous conditions, and instead it viewed the Restatement and Arizona cases relying on it as standing for "the limited proposition that a landowner's duty of care to business invitees encompasses activities on the land and is not limited to dangerous conditions." *Simon*, 173 P.3d at 1038. The *Simon* court reasoned that "the potential for abuse would be great" if Safeway could disclaim liability "merely because the individuals it permitted to interact so closely with its customers had been hired by an independent contractor." *Id.* at 1040. It therefore held that when "a business owner assumes a duty to provide security services, that duty is nondelegable, and the owner will not be insulated from liability for the tortious acts of security personnel hired as independent contractors." *Id.; see also id.* at 1040 n. 10 (collecting cases reaching similar conclusions); *Peachtree–Cain Co. v. McBee*, 170 Ga.App. 38, 316 S.E.2d 9, 10–11 (1984) (holding that when property owners undertake to provide security services, they have a nondelegable duty to provide responsible agents), *aff'd*, 254 Ga. 91, 327 S.E.2d 188 (1985); *Rockwell v. Sun Harbor Budget Suites*, 112 Nev. 1217, 925 P.2d 1175, 1179 (1996) (same); 41 Am.Jur.2d *Independent Contractors* § 45 (2005) (citing *Peachtree–Cain* ).

¶ 27 In granting summary judgment to Tommy John, the district court distinguished *Simon* from the present case based on the nature of the relationship between Safeway and the security guard in *Simon*. Safeway's store manager played a role in the security guard's detention of the plaintiff, and the evidence as a whole suggested "Safeway maintained some control over the use of force by security guards and how shoplifting incidents were to be handled." *Simon*, 173 P.3d at 1035. The *Simon* court concluded that this evidence "offer[ed] support for Simon's claim that the relationship between Safeway

and [the security guard] ... was that of master—servant." *Id.* Thus, the *Simon* court ruled that the district court had erred in denying Simon's motion for additional discovery on the nature of that relationship. *Id.* at 1036. Because there are no facts in the present case from which it can be inferred that Tommy John had an employer—employee relationship with or retained control over Thor Staffing or its employees, *see supra* ¶¶ 2, 10–12, the district court concluded that *Simon* was not helpful to its analysis.

¶ 28 The district court considered more persuasive the Texas Supreme Court's decision in *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788 (Tex.2006). In that case, the plaintiff was denied entrance to a nightclub by a doorman who requested that two members of the parking lot security team escort the plaintiff away from the club's entrance. *Id.* at 790. The plaintiff was injured during an ensuing altercation with a security guard who was working as an independent contractor to provide parking security at the nightclub. *Id.* The plaintiff sued the nightclub, arguing, among other things, that it had assumed a nondelegable duty by contracting for security services. *Id.* at 790–91. The Texas court refused to expand the nondelegable duty exception by adopting a rule whereby "a premises owner can be held liable when an independent contractor's work involves duties that are personal in character," including security. *Id.* at 792–96. The court acknowledged that some states have adopted such a rule but reasoned that neither of the rationales offered for doing so were valid under Texas law. *Id.* at 793–96 (collecting cases).

¶ 29 The first reason advanced in *Fifth Club* for defining the provision of security services as nondelegable based on the personal character of the duty was to provide consistency with a Texas state law that "impose[s] a nondelegable or personal duty on the business owner to keep the premises safe, therefore making the business owner responsible for the acts of independent contractors hired to keep the premises safe." *Id.* at 794. The Texas court was not persuaded by this basis for imposing liability on the employer because "this case is not based

on premises liability, but involves alleged vicarious liability for the acts of an independent contractor." *Id.* The second rationale the *Fifth Club* court considered was an asserted public policy that "business owners should not have the benefit of surveillance or protection of their property without the penalties for unlawful activities by their independent contractors performing protective or security functions." *Id.* at 794–95. The court concluded that this rationale was not applicable because the Texas Legislature "has not identified security work as carrying ... nondelegable duties or carved out a special exception allowing business owners or employers to be held liable for the conduct of their independent-contractor security personnel." *Id.* at 796. The Texas Supreme Court therefore declined to define the provision of security services as nondelegable based on the personal character of the duty and instead reaffirmed nonliability for work performed by an independent contractor hired to provide security services, subject to "the [retained] control exception and the nondelegable duty exception, which includes inherently dangerous activities and statutorily-imposed duties." [11] *Id.* The court further noted that a special exception for security work was unnecessary because the plaintiff had a direct claim against the nightclub for negligent hiring. *Id.; see also Thomas,* 2013 WL 3280246, at *2 (holding that the provision of security is not a nondelegable duty); *Schreiber v. Camm,* 848 F.Supp. 1170, 1175–79 (D.N.J.1994) (same); *Del Signore v. Pyramid Sec. Servs., Inc.,* 147 A.D.2d 759, 537 N.Y.S.2d 640, 642 (1989) (same).

¶ 30 Although the issue of whether the provision of security services is a nondelegable duty is one of first impression, the Utah Supreme Court has considered whether the scope of the duty to keep business premises reasonably safe includes the provision of security services. In *Gray v. Scott,* 565 P.2d 76 (Utah 1977), the plaintiff sued the owner of a lodge for the wrongful death of his son, who was shot during a New Year's Eve party by another patron. *Id.* at 76. Two days before the shooting, the victim had engaged in a scuffle with the shooter at the lodge. *Id.* After the manager of the lodge intervened, the victim departed. *Id.* The manager learned later that evening that there had been a shooting in the alley near the lodge. *Id.* at 76–77. In addition, approximately six months before the New Year's Eve party, there had been an unrelated incident during which one member of the lodge shot another member in the leg during a card game. *Id.* at 77. Nevertheless, the officers of the lodge did not consider it necessary to provide security guards to police their social functions. *Id.*

¶ 31 The plaintiff sued on a theory of negligence, alleging that, based on the scuffle, shooting, and earlier unrelated shooting incident, the manager should have made efforts to learn the identity of the parties involved in the recent incident and to provide security to protect the victim at the subsequent New Year's Eve party. *Id.* at 77–78. The jury entered a verdict in favor of the lodge owner. *Id.* at 76. The plaintiff appealed, claiming that the jury should have been instructed that the lodge owner "had the duty to anticipate danger which is reasonably foreseeable and to take all precautions for the protection of their guests, which reasonable prudence and ordinary care would suggest." *Id.* at 77.

¶ 32 Relying on section 344 of the Restatement (Second) of Torts, the Utah Supreme Court rejected the plaintiff's argument. *Id.* at 78. Instead, the court explained, the duty of a possessor of land to protect its patrons from the "accidental, negligent, or intentionally harmful acts of third persons" is limited by comment f to section 344. *Id.* (citation and internal quotation marks omitted). That comment emphasizes that the possessor of land is not a guarantor of the visitor's safety and that the duty to exercise due care does not arise " 'until [the landowner] knows or has reason to know that the acts of the third person are occurring, or are about to occur.' " *See id.* (quoting Restatement (Second) of Torts § 344 cmt. f (1965)). In *Gray,* the supreme court held that the facts did not establish that the lodge owner knew or had a

---

**11.** Some states, including Texas, apply the inherently dangerous activity doctrine as a means of determining whether a duty is nondelegable, rather than as a stand-alone exception to the general rule of nonliability.

reason to know that violence would occur at the New Year's Eve party. *Id.* Accordingly, it concluded that the trial court did not err when it instructed the jury that the lodge owner had no duty to anticipate that a crime would occur and to act on that belief. *Id.* at 78–79; *see also Steffensen v. Smith's Mgmt. Corp.*, 862 P.2d 1342, 1345 (Utah 1993) (holding that a storekeeper has no duty under section 344 to protect customers from a fleeing shoplifter "until the storekeeper knows or should know that a criminal act (like shoplifting) is likely to occur which might imperil the safety of customers"); *Dwiggins v. Morgan Jewelers*, 811 P.2d 182, 182–83 (Utah 1991) (holding that the owner of a jewelry store was not liable for injuries suffered by the plaintiff who was struck with a crowbar during a robbery that occurred while she was shopping at the store, and stating that the duty described in section 344 "exists in Utah, but ... does not arise until the business owner knows, or should know, that criminal acts are likely to occur").

¶ 33 While *Gray* did not involve an intentional tort committed by an employee of an independent-contractor security company, it suggests that the Utah Supreme Court did not intend to limit premises liability to conditions on the land. However, before the owner can be liable for the intentional acts of third parties inflicted on the owner's patrons, the owner must know or have reason to know that such acts are likely to occur. This same limitation has been applied by the Utah Supreme Court in determining the liability of a store owner for the acts of its independent contractor.

¶ 34 In *Pagan v. Thrift City, Inc.*, 23 Utah 2d 207, 460 P.2d 832 (1969), a store owner hired an independent contractor to operate a merry-go-round on its parking lot. *Id.* at 833. The store owner did not direct or control the operation of the merry-go-round. *Id.* A mother was injured while trying to rescue her unconscious child from the merry-go-round, and she sued the store owner. *Id.* After the district court granted summary judgment in favor of the store owner, the mother appealed. The supreme court explained,

> A possessor of land who holds it open to the public for business purposes is subject to liability for injuries to members of the public where harm is caused by negligent or intentional acts of third persons provided the possessor of the land failed to exercise reasonable care to discover that such acts are being done or likely to be done, or to give a warning adequate to enable visitors to avoid harm.

*Id.* at 834. Because there was no evidence presented that the merry-go-round was being operated in a negligent manner or that its operation presented a hazardous situation which might cause harm to a member of the public, the supreme court upheld the summary judgment in favor of the store owner. *Id.* (citing Restatement (Second) of Torts § 344 (1965)).

¶ 35 Based on these Utah decisions, a preliminary question here is whether Tommy John knew or had any reason to know that the security guards hired by Thor Staffing might intentionally attack its patrons. Because Tommy John hired Thor Staffing, it is apparent that Tommy John anticipated the possibility that patrons might create a risk of harm to other patrons or property. But that is not the conduct that caused Castellanos's injuries. He alleged that he was injured by the intentional acts of the security guards employed by Thor Staffing, not by another patron. *See Schreiber v. Camm*, 848 F.Supp. 1170, 1177 (D.N.J.1994) (distinguishing between injuries caused by another patron and injuries inflicted by an independent security guard).

¶ 36 In his complaint, Castellanos alleged that "Tommy John knew or should have known that security guards under its supervision, had a propensity to commit the type of acts complained of herein." But he points us to no evidence that supports that allegation. To establish that Tommy John had a duty to keep its patrons safe from the acts of Thor Staffing's security guards, Castellanos bore the burden to establish that Tommy John knew or had reason to know that its patrons were at risk of physical injury from the security guards' intentional acts. At the summary judgment stage, Castellanos could not rest merely on the allegations in his

complaint. *See Orvis v. Johnson*, 2008 UT 2, ¶ 18, 177 P.3d 600 (explaining that after a party moving for summary judgment shows that there is no genuine issue of material fact, the burden shifts to the nonmoving party "who may not rest upon the mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial" (citation and internal quotation marks omitted)). Without some evidence that Tommy John knew or had reason to know that the security guards were likely to commit intentional torts on patrons of the establishment, the district court properly granted summary judgment in favor of Tommy John.

¶ 37 Although other jurisdictions have held that the provision of responsible security personnel, once undertaken, is a nondelegable duty, we are not convinced that this approach is consistent with Utah law absent some knowledge on the part of the premises owner. As the Texas court noted, the plaintiff is not without a remedy, because he has a direct liability claim against the owner if the owner negligently hired the security company. *See Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 796 (Tex.2006). Where the owner acted reasonably in hiring an independent-contractor security company and had no prior knowledge that the security company's employees were committing intentional torts against its patrons, we see no reason to expand the nondelegable duty exception to the nonliability rule for independent contractors.

¶ 38 Many charities, schools, and business establishments routinely hire off-duty police officers or independent-contractor security companies to maintain the peace at their businesses or during special events. In addition to protecting their own property, the provision of security services protects innocent patrons from the inappropriate behavior of others. We can think of no reason to discourage this practice by eroding the nonliability rule. Furthermore, it is unlikely that these employers are in a better position to provide security services themselves than the independent-contractor security company they would hire. Consequently, to the extent such services are provided, it may be best to

encourage that persons or businesses with security experience be retained to do so.

¶ 39 We are also mindful that the Utah Legislature has not characterized security work as inherently dangerous or carved out an exception holding business owners or employers liable for the conduct of their independent-contractor security personnel. *See id.* (noting that nondelegable duties may be statutorily imposed). Rather, Utah has a statutory scheme that governs security work and requires licensure to engage in the practice of a contract security company. Utah Code Ann. § 58–63–301(1) (LexisNexis 2012). *See generally id.* §§ 58–63–101 to –601 (LexisNexis 2012 & Supp.2013) (the Security Personnel Licensing Act). Utah law also requires security companies to carry liability insurance, presumably to ensure that a security company is able to cover damages in the event a company or one of its employees is at fault for an injury. *See id.* § 58–63–302(1)(j)(i) (LexisNexis Supp.2013) (requiring every contract security company to file and maintain evidence of comprehensive general liability insurance). In addition, the independent-contractor security company hires the individual security guards and as "an employer may be held vicariously liable for the acts of its employee if the employee is in the course and scope of his employment at the time of the act giving rise to the injury." *See Newman v. White Water Whirlpool*, 2008 UT 79, ¶ 8, 197 P.3d 654. As a result, the independent-contractor security company is in the best position to prevent injury to third parties by responsibly hiring and training its security guard employees.

¶ 40 We conclude that under Utah law the risk of liability for the intentional acts of the employees of an independent-contractor security company falls on the security company unless the employer of the security company retains control over the means and methods of the security personnel's work, *see supra* ¶ 9, acts negligently in hiring the security company, *see infra* ¶¶ 41–42, or has reason to know that intentional torts by the security company's employees are likely, *see supra* ¶ 33. Castellanos failed to come forward with evidence of any of these circumstances. We therefore conclude

that the district court correctly rejected Castellanos's vicarious liability claims against Tommy John.

## II. Negligent Hiring, Supervision, and Retention

¶ 41 Finally, Castellanos argues that the district court erred in granting summary judgment on his negligent hiring claim because disputed issues of material fact precluded the district court from determining that Tommy John was not negligent as a matter of law. "[S]ummary judgment is appropriate in negligence cases only in the clearest instances." *Dwiggins v. Morgan Jewelers*, 811 P.2d 182, 183 (Utah 1991). "Bare allegations of negligence unsupported by facts, however, are insufficient to withstand a motion for summary judgment." *Id.*

> To establish a claim of negligence, the plaintiff must establish four essential elements: (1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages.

*Webb v. University of Utah*, 2005 UT 80, ¶ 9, 125 P.3d 906 (citation and internal quotation marks omitted). "The tort of negligent hiring, supervision, or retention is an exception to the general rule 'that there is no affirmative duty to control the conduct of a third party so as to prevent the third party from causing harm to another.'" *Tomlinson v. NCR Corp.*, 2013 UT App 26, ¶ 24, 296 P.3d 760 (quoting Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 41 cmt. a (2012)), *cert. granted*, 304 P.3d 469 (Utah 2013).

¶ 42 To recover under a theory of negligent hiring, supervision, or retention, a "plaintiff must show that [the defendant] had a duty to protect him from harm *at the hands of its employees*, a negligent breach of that duty, and the harm and damages caused by that breach." *J.H. v. West Valley City*, 840 P.2d 115, 124 (Utah 1992) (emphasis added); *see also Jackson v. Righter*, 891 P.2d 1387, 1392 (Utah 1995) ("In the context of a claim for negligent supervision or retention, a duty may arise when an employer could reasonably be expected, consistent with the practical realities of *an employer—employee relationship*, to appreciate the threat to a plaintiff of *its employee*'s *actions* and to act to minimize or protect against that threat." (emphases added)); Black's Law Dictionary 1135 (9th ed.2009) (defining "negligent hiring" as "[a]n employer's lack of care in selecting an employee who the employer knew or should have known was unfit for the position, thereby creating an unreasonable risk that another person would be harmed"). However, Castellanos points us to no authority to support the proposition that an employer of an independent contractor may be held liable for the negligent hiring, supervision, or retention of the contractor's employees.

¶ 43 Castellanos contends that "[t]he evidence here created at least an inference Tommy John made an inadequate investigation to verify that Thor[ Staffing]'s services were competent and safe for public invitees and was therefore negligent." In response, Tommy John asserts that Castellanos did not plead a claim against it for negligently hiring Thor Staffing. According to Tommy John, Castellanos's amended complaint only alleged that Tommy John was negligent in hiring, supervising, and retaining the security guards. Because Tommy John hired Thor Staffing and contracted with it to hire and supervise the individual security guards, Tommy John asserts it had no duty to exercise care in Thor Staffing's hiring or supervision of the individual security guards.

¶ 44 Castellanos brought a direct negligence claim against Tommy John for negligent hiring, supervision, and retention. Specifically, Castellanos alleged,

> 70. *Tommy John*, at all times material hereto, *was the employer of the security guards* at the [establishment] ... and as such had the duty, responsibility and authority to exercise supervisory control over [the establishment] security officers.

> 71. Tommy John knew or should have known that *security guards under its supervision*, had a propensity to commit the type of acts complained of herein.

> 72. Tommy John, acting in its capacity *as an employer of the security guards negli-*

*gently hired, retained, and failed to train, control or terminate the [establishment] security guards,* all or some of whom possess personal propensities and characteristics making them unfit to serve as security guards.

73. As a direct and proximate result of the negligent, careless and reckless acts and omissions of Tommy John, [Castellanos] has suffered and will continue to suffer the injuries and damages set forth in each of the preceding Counts of this Complaint.

(Emphases added.) Notably, Castellanos's amended complaint did not allege that Tommy John negligently hired or retained Thor Staffing. And it is undisputed that the security guards involved in the altercation with Castellanos were employed by Thor Staffing, not Tommy John. Moreover, there is no indication in the Agreement that Tommy John had supervisory authority over Thor Staffing's hiring practices or employees. *See supra* ¶¶ 2, 12. Finally, Castellanos came forward with no facts that could establish that Tommy John had a duty to exercise reasonable care in the hiring, supervision, and retention of Thor Staffing's employees.

¶ 45 In sum, Castellanos alleged that Tommy John negligently hired, supervised, and retained the individual security guards, but the undisputed facts indicate that the security guards were employees of the independent contractor, Thor Staffing. Accordingly, the district court correctly granted summary judgment on Castellanos's negligence claim because Tommy John had no duty to exercise care in the hiring, supervision, and retention of Thor Staffing's employees and Castellanos did not allege that Tommy John negligently hired Thor Staffing.

## CONCLUSION

¶ 46 The district court correctly granted summary judgment on Castellanos's vicarious liability claims because none of the exceptions to the nonliability rule for the acts of independent contractors is applicable here. The district court also correctly granted summary judgment on Castellanos's negligent hiring, supervision, and retention claim because Castellanos alleged only that Tommy John was negligent in its hiring of the individual security guards rather than its hiring of the independent contractor, Thor Staffing.

¶ 47 Affirmed.